**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| BENTON ENERGY SERVICE COMPANY dba BESCO TUBULAR | § § § | CIVIL ACTION NO. 2:18-CV-05630 |
| **Plaintiffs,** | § § | **JUDGE: JAY C. ZAINEY** |
| **vs.** | § § | |
| CAJUN SERVICES UNLIMITED, LLC dba SPOKED MANUFACTURING | § § § | **MAGISTRATE JUDGE:** **JOSEPH C. WILKINS, JR.** |
| **Defendant.** | § § | |

**DEFENDANT CAJUN SERVICES UNLIMITED, LLC DBA SPOKED MANUFACTURING'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

NOW INTO COURT, through undersigned counsel, comes Defendant Cajun Services Unlimited, LLC dba Spoked Manufacturing ("Cajun"), who respectfully files this memorandum in support of its Motion to Dismiss Benton Energy Service Company dba Besco Tubular's ("Besco") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) (the "Motion") for lack of federal subject matter jurisdiction, and states as follows:

I.      **INTRODUCTION**

In an admitted attempt to steal the "plaintiff's chair" Cajun has occupied since litigation between the parties began in January 2017, Besco filed its Complaint the day before the '862 Patent issued. Well over 100 years of legal authority makes clear that a complaint involving the infringement and validity of a patent filed before the issuance of that patent suffers from an incurable defect in standing. Cajun made Besco aware of this fact and requested that it dismiss its claims in good faith and refile them in Cajun's properly filed action. Despite no legal or factual basis for maintaining its claims, Besco has refused to dismiss its complaint and forced Cajun to

expend valuable resources filing this Motion.  Cajun respectfully requests that the Court dismiss Besco's claims, which Besco will have ample opportunity to refile in Cajun's properly filed lawsuit.

## II.   FACTUAL BACKGROUND

Besco filed this lawsuit ("Besco's Lawsuit") on June 4, 2018, asserting declaratory judgment claims of non-infringement, invalidity, and unenforceability with respect to a patent that did not exist.  (Rec. Doc. 1.)  Rather, Besco likely gleaned the patent number and issue date from the Issue Notification issued by the United States Patent and Trademark Office ("USPTO") on May 16, 2018, attached hereto as Exhibit A.  The following day Cajun was issued United States Patent No. 9,988,862 ("the '862 Patent"), attached hereto as Exhibit B.  Cajun filed a lawsuit on June 14, 2018, Case No. 2:18-cv-05932 ("Cajun's Lawsuit"), asserting a cause of action for Besco's willful direct and indirect infringement of the '862 Patent, as well as each of its causes of action asserted in Case No. 2:17-cv-00491 (the "First Litigation").  Cajun informed the Court and Besco of the incurable standing defect upon which this Motion is premised on June 15, 2018. (First Litigation, Rec. Doc. 137, ¶ 10.)

On the same day, Cajun requested that Besco dismiss its Complaint in good faith in view of that standing defect.  Besco responded on June 20, 2018, refusing to dismiss its claims and claiming that a recent Federal Circuit decision that expanded declaratory judgment jurisdiction provided the basis for its standing to pursue its claims.  Cajun responded the following day, laying out the deficiency in Besco's theory of standing—the same deficiency set forth in this Motion— and provided Besco with notice that it would seek an award of its fees pursuant to 35 U.S.C. § 285 in view of Besco's exceptional litigation position.  *See Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1181 (Fed. Cir. 2018) (suggesting that "early, focused, and supported notice of its belief that it was being subjected to exceptional litigation behavior" may be required

by a litigant in order to later seek an award of its fees pursuant to 35 U.S.C. § 285). Besco responded by repeating its reliance on the same authority, seemingly contending the Declaratory Judgment Act is its basis for federal subject matter jurisdiction. Finally, Cajun responded by challenging Besco to provide any legal authority holding that federal subject matter jurisdiction could exist over patent claims filed before the patent was issued by the USPTO. Besco did not respond.

## III.    LEGAL AUTHORITY

### A.    Rule 12(b)(1) Standard

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "In a 12(b)(1) motion, the party asserting jurisdiction bears the burden of proof that jurisdiction does in fact exists." *Brown v. Am. Modern Home Ins. Co.*, No. 16-16289, 2017 U.S. Dist. LEXIS 80057, at *6 (E.D. La. May 24, 2017) (citing *Ramming*, 281 F.3d at 161). Under Article III of the Constitution of the United States, a litigant must have constitutional standing to invoke federal subject matter jurisdiction. *Allen v. Wright*, 468 U.S. 737, 750 (1984). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and the claim must be dismissed." *Brown*, 2017 U.S. Dist. LEXIS 80057 at *7 (citing U.S. Const. art. 3, § 2, cl. 1).

A Rule 12(b)(1) motion for dismissal "can be predicated upon either a 'facial' attack, or a 'factual' attack to jurisdiction. *Consol. Grain & Barge, Inc. v. Anny*, No. 11-2204, 2013 U.S. Dist. LEXIS 16061, at *10–11 (E.D. La. Feb. 5, 2013). This Court previously described the differences between a facial and factual attack as follows:

> A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. A

'factual attack,' however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered…[and] when a 'factual' attack to jurisdiction is raised no presumption of truthfulness attaches to the plaintiff's allegations.

*Id.* at 11–12 (citations omitted).

### B.    Standing under the Declaratory Judgment Act in Patent Disputes

The Declaratory Judgment Act provides that, "*[i]n a case of actual controversy within its jurisdiction*…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "The phrase 'case of actual controversy' refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Danisco US, Inc. v. Novozymes A/S*, 744 F.3d 1325, 1329 (Fed. Cir. 2014) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). Thus, "the existence of an actual controversy is an absolute predicate for declaratory judgment jurisdiction." *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 633–34 (Fed. Cir. 1991). The Declaratory Judgment Act "does not enlarge the jurisdiction of the federal courts; it is procedural only." *Vaden v. Discover Bank*, 556 U.S. 49, 70 n.18 (2009). Finally, the burden to establish that an Article III case or controversy existed at the time that the claim for declaratory relief was filed is on the party claiming declaratory judgment jurisdiction. *Danisco*, 744 F.3d at 1329.

With respect to patent disputes, "[i]t is well established that the exclusive rights conferred by a United States patent do not take effect until the patent formally issues." *Jat Wheels, Inc. v. DB Motoring Grp., Inc.*, No. CV 14-5097-GW(AGRx), 2016 U.S. Dist. LEXIS 191940, at *5 (C.D. Cal. Feb. 11, 2016) (citing *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996) ("Patent rights are created only upon the formal issuance of the patent[.]")). As a result, the Federal Circuit has consistently held that "a threat is not sufficient to create a case

or controversy unless it is made with respect to a patent that has issued before a complaint is filed." *GAF Bldg.*, 90 F.3d at 482; *see also Radio Systems Corp. v. Lalor*, 709 F.3d 1124, 1131 (Fed. Cir. 2013) (reversing summary judgment of noninfringement for lack of case or controversy because the patent had not yet issued).  Thus, where a patent has not issued at the time the complaint is filed, a "declaratory judgment of 'invalidity' or 'noninfringement'…would have…no legal meaning or effect" and would therefore call for an impermissible advisory opinion.  *City State Entm't, LLC v. Lemay*, No. 2:14-CV-329, 2014 U.S. Dist. LEXIS 193251, *6–7 (E.D. Va. Sep. 24, 2014) (quoting *GAF Bldg.*, 90 F.3d at 482).  This has been the state of the law for at least 140 years.  *See Hendrie v. Sayles*, 98 U.S. 546, 551 (1878) ("[A]n inventor has no exclusive right to make, use, and vend the improvement until he obtains a patent for the invention …nor can the inventor maintain any suit for infringing the same before the patent is issued[.]").

Finally, "[l]ater events may not create jurisdiction where none existed at the time of filing." *Spectronics*, 940 F.2d at 635.  Rather, "the presence or absence of jurisdiction must be determined on the facts existing at the time the complaint under consideration was filed."  *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734 n.2 (Fed. Cir. 1988).  Where the patent that forms the basis of the dispute had not issued at the time a complaint was filed, the subsequent issuance of the patent does not cure the jurisdictional defect.  *GAF Bldg.*, 90 F.3d at 483.

## IV.    ARGUMENT

The Court did not have subject matter jurisdiction to hear Besco's claims at the time the Complaint was filed because the basis for federal subject matter jurisdiction—Cajun's patent rights—did not exist at the time the Complaint was filed.  It is indisputable that Cajun's patent rights did not come into existence until the '862 Patent formally issued on June 5.  *GAF Bldg.*, 90 F.3d at 483.  The Federal Circuit and district courts that have addressed the issue have consistently held that the existence of those patent rights was necessary for there to be any Article III case or

controversy regarding those rights.  *Id.* at 482 (holding that no case or controversy exists unless patent has issued prior to filing suit).[1]  Therefore, at the time of filing, Besco's Complaint necessarily sought an impermissible advisory opinion as to infringement and validity because Cajun's rights were purely hypothetical.  *City State Entm't*, 2014 U.S. Dist. LEXIS 193251 at *7.  Further, the fact that the patent issued the day after Besco filed its lawsuit does not cure the defect in Besco's standing to pursue its claims, as federal subject matter jurisdiction is determined based upon the facts existing at the time the complaint was filed.  *GAF Bldg.*, 90 F.3d at 483.

This legal reality is exactly why Cajun waited until *after* the patent issued to file its lawsuit. If it was possible to file a claim for patent infringement before the issuance of a patent, Cajun would have done so in the previous litigation between the parties, as the claims asserted in Cajun's Lawsuit were allowed on April 24, 2018 (but did not formally issue until June 5, 2018).  *See* Exhibit C.  Cajun did not, however, because the Court would not have had subject matter jurisdiction to hear the dispute as discussed above because the '862 Patent *did not exist* until June 5, 2018.  This fact is further demonstrated by the noticeable absence in Besco's Complaint of any allegations regarding the issue date of the '862 Patent or inclusion of the '862 Patent as an exhibit to that Complaint.

---

[1] *See, e.g.*, *Radio Sys. Corp.*, 709 F.3d at 1131 ("Quite simply, the…patent claims could not have been asserted…until those claims issued"); *Abbey v. Mercedes Benz of N. Am., Inc.*, 138 F. App'x 304, 307 (Fed. Cir. 2005) ("[a] patent application cannot be infringed"); *GAF Bldg.*, 90 F.3d at 482; *Rooks v. P&G, Inc.*, No. 5:16-CV-553-CAR-MSH, 2017 U.S. Dist. LEXIS 51019, at *6 (M.D. Ga. Apr. 4, 2017); *Jat Wheels*, 2016 U.S. Dist. LEXIS 191940 at *5–6 ("It is well established that the exclusive rights conferred by a United States patent do not take effect until the patent formally issues."); *City State Entm't*, 2014 U.S. Dist. LEXIS 193251 at *7; *Matthews Int'l, Corp. v. Biosafe Eng'g, LLC*, No. 11-269, 2011 U.S. Dist. LEXIS 110010, at *30–31 (W.D. Pa. Sep. 27, 2011); *Ogindo v. DeFleur*, No. 07-CV-1322, 2008 U.S. Dist. LEXIS 97362, at *3 (N.D.N.Y. Dec. 1, 2008) ("There is no claim for patent infringement unless a patent has issued."); *Chamilia, LLC v. Pandora Jewelry*, LLC, No. 04-CV-6017 (KMK), 2007 U.S. Dist. LEXIS 71246, at *62–65 (S.D.N.Y. Sep. 24, 2007); *Dr. Reddy's Labs., Ltd. v. aaiPharamaInc.*, No. 01-CV-10102, 2002 U.S. Dist. LEXIS 17287, at *23 (S.D.N.Y. Sept. 13, 2002)  ("It is axiomatic that [the plaintiff] cannot obtain a declaratory judgment of invalidity and/or noninfringement on a patent that has not yet been issued by the PTO at the time the complaint was filed."); *Eldridge v. Springs Indus.*, 882 F. Supp. 356, 357 (E.D.N.Y. 1995) ("It is well settled that a patent cannot be infringed until after that patent has been issued."); *see also Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 371 F. Supp. 2d 965, 970–71 (N.D. Ill. 2005) (rejecting claim for declaratory judgment of patent unenforceability that was filed before patent issued).

While a facial attack on Besco's claims would suffice because the Court cannot have subject matter jurisdiction under the circumstances before it, Cajun's attack on Besco's complaint is necessarily a factual one. This is because Cajun relies on matters outside the pleadings—the '862 Patent itself—as evidence of the patent's issuance on June 5, 2018. While Besco's Complaint refers to the '862 Patent throughout, it fails to include the patent itself as an exhibit. Of course, the patent is not attached as an exhibit because *it did not exist* at the time Besco filed its complaint. Instead, all that existed was an Issue Notification from the USPTO stating the date that the patent would issue and the patent number it would issue as. *See* Exhibit A. Because Cajun relies on evidence that is outside of the pleadings, its attack on Besco's standing is a factual one, and Besco's allegations are not entitled to a "presumption of truthfulness" as they would be in the event of a facial attack. *Consol. Grain & Barge*, 2013 U.S. Dist. LEXIS 16061 at *11–12.

Cajun raised the issue of lack of subject matter jurisdiction in its June 15, 2018 Status Report filed in the First Litigation. (First Litigation, Rec. Doc. 137.) Cajun also followed up with Besco the same day by email, requesting that Besco dismiss its claims and refile them in Cajun's Lawsuit. Besco responded on June 20, 2018, refusing to dismiss its case and relying on the Federal Circuit's recent decision in *Danisco US, Inc. v. Novozymes A/S*. 744 F.3d 1325 (Fed. Cir. 2014). Specifically, Besco relies on the *Danisco* Court's holding that pre-patent issuance conduct may be considered when determining whether a justiciable controversy exists for purposes of exercising jurisdiction under the Declaratory Judgment Act. *See id.* at 1330–32. Thus, Besco's position is that the holding of *Danisco* allows a court to exercise federal subject matter jurisdiction over a patent dispute *before* the patent issues so long as a patent holder's pre-issuance conduct creates a justiciable controversy.

Besco's position flies in the face of Supreme Court and Federal Circuit precedent.  The Supreme Court recently reaffirmed its 1937 holding that the Declaratory Judgment Act "is procedural only" and "does not enlarge the jurisdiction of the federal courts[.]"  *Vaden*, 556 U.S. at 70 n.18; *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) ("The operation of the Declaratory Judgment Act is procedural only.").  The *Danisco* holding could not have disrupted this 80-year-old Supreme Court precedent.  Besco's position also conflicts with binding Federal Circuit precedent (which Cajun provided to Besco) holding that "the existence of an actual controversy is an absolute predicate for declaratory judgment jurisdiction."  *GAF Bldg.*, 90 F.3d at 481 (quoting *Spectronics*, 940 F.2d 633–34).  While Besco appears to believe the *Danisco* Court implicitly overruled this holding, the Court need only look to the Danisco decision itself to confirm that the *Danisco* decision recognizes that "[t]he phrase 'case of actual controversy' refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."  *Danisco*, 744 F.3d at 1329 (quoting *MedImmune*, 549 U.S. at 127).

Notably, the *Danisco* Court cites to the portion of the Supreme Court's *MedImmune* opinion that relies on the Supreme Court's landmark *Aetna* decision that originally held that the Declaratory Judgment Act is not a source of federal subject matter jurisdiction.  That exact holding of *Aetna* serves as the basis of the Federal Circuit's *GAF* decision which Besco now contends is overruled by *Danisco*.  Thus, the *Danisco* decision did not disrupt Supreme Court and Federal Circuit authority requiring that (1) an actual Article III controversy is an "absolute predicate" to declaratory judgment jurisdiction and (2) an actual Article III controversy with respect to patent rights necessarily cannot exist until those patent rights exist.  The several post-*Danisco* decisions holding the same confirm as much.[2]  Rather, the *Danisco* decision holds that pre-issuance conduct

---

[2] *See Rooks*, 2017 U.S. Dist. LEXIS 51019 at *6; *Jat Wheels*, 2016 U.S. Dist. LEXIS 191940 at *5–6; *City State Entm't*, 2014 U.S. Dist. LEXIS 193251 at *7.

can be considered when weighing the totality of the circumstances in determining whether declaratory judgment jurisdiction can be exercised—a holding that is entirely inapposite to the incurable defect in Besco's standing.

Further, Besco's reliance on the *Danisco* decision and refusal to dismiss its claims demonstrates exceptional conduct under the circumstances, as the decision provides Besco no basis in law and fact for maintaining that it has standing to pursue its claims.  Nor does the decision allow Besco to make a good faith argument for an extension, modification or reversal of existing law.  Rather, the *Danisco* decision confirms in some respects, and does not discuss in other respects, the binding precedent Cajun provided Besco with when it initially requested that Besco dismiss its claims in good faith.

The Supreme Court recently revisited the Patent Act's fee-shifting provision, 35 U.S.C. § 285,  and held that exceptional conduct such as Besco's warrants an award of Cajun's fees incurred in having to litigate baseless claims.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  This District recently held that "an exceptional case is one where (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigation position; or (2) the unsuccessful party has litigated the case in an unreasonable manner."  *All. for Good Gov't v. Coal. for Better Gov't*, No. 17-3679, 2018 U.S. Dist. LEXIS 106431, at *5 (E.D. La. June 26, 2018) (citing *Octane Fitness*, 134 S. Ct. at 1756).

Besco's reliance on the *Danisco* decision, both in the face of a wealth of other, binding precedent and considering *Danisco's* own holding as well, stands out as unreasonable and has forced Cajun to expend resources moving to dismiss claims that should never have been filed. Additionally, Cajun pointed out the shortcomings in Besco's reliance on the *Danisco* decision to

9

Besco and specifically challenged Besco to provide *any* case explicitly holding that a court can have subject matter jurisdiction over a patent dispute filed before the patent in question issues. Besco did not do so, opting to force Cajun to file its Motion instead.  To the extent Besco has found such authority and withheld it until it responds, doing so constitutes litigating in an unreasonable manner.  Based on the foregoing, if Besco's claims are dismissed—as they must be—Cajun reserves the right to pursue an award of its fees pursuant to 35 U.S.C. § 285.

## V.     CONCLUSION

Cajun respectfully requests the Court dismiss Besco's claims without prejudice due to an incurable lack of standing and provide Besco with an opportunity to refile such claims in Cajun's properly-filed lawsuit.

DATED: July 31, 2018                      Respectfully submitted,

By:     /s/ Tori S. Bowling
Tori S. Bowling (Bar #30058)
KEOGH, COX & WILSON, LTD.
P.O. Box 1151
Baton Rouge, Louisiana 70821-1151
Phone: (225) 383-3796
Fax: (225) 343-9612
Email: tbowling@keoghcox.com

**Walter J. Scott, Jr.** (admitted *pro hac vice*)
skip@scott-llp.com
*Trial Attorney*
**George T. Scott** (admitted *pro hac vice*)
jorde@scott-llp.com
**SCOTT LAW GROUP LLP**
3249 Lake Drive
Southlake, TX 76092
P: 214-755-1978
F: 817-887-1874

**ATTORNEYS FOR DEFENDANT**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 31, 2018 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

<u>/s/ Tori S. Bowling</u>
Tori S. Bowling