UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CAJUN SERVICES UNLIMITED, LLC, ET AL. | CIVIL ACTION |
| | NO. 17-0491 |
| VERSUS | c/w 18-5630 and 18-5932 |
| BENTON ENERGY SERVICE COMPANY, ET AL. | SECTION: M (2) *Pertains to all cases* |

## ORDER & REASONS

Before the Court is a motion to dismiss for lack of federal subject-matter jurisdiction filed by defendant Cajun Services Unlimited, LLC, d/b/a Spoked Manufacturing ("Cajun"),[1] to which plaintiff Benton Energy Service Company, d/b/a Besco Tubular ("Besco"), responds in opposition,[2] and in support of which Cajun replies.[3] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

**I.     BACKGROUND**

This action is one among three consolidated lawsuits over rights to an elevator roller insert system ("ERIS"), a technology used in drilling for oil. On January 20, 2017, Cajun filed suit against Besco ("Cajun I Lawsuit"), alleging violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1831, *et seq.*; violation of the Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431, *et seq.*; violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, *et seq.*; bad faith breach of contract; fraud; and civil conspiracy.[4] Cajun also sought injunctive relief and a declaratory judgment that Cajun was the owner of all right, title, and interest to all improvements and modifications made to the ERIS, its practice, and any inventions, patent

---

[1] R. Docs. 142 (Case No. 17-491), 9 (Case No. 18-5630).
[2] R. Doc. 10 (Case No. 18-5630).
[3] R. Doc. 147 (Case No. 17-491).
[4] R. Doc. R. Doc. 1 at 14-28 (Case No. 17-491).

1

applications, or patents that relate to the ERIS.[5] Besco filed a motion for partial summary judgment to dismiss Cajun's claim under the DTSA on the ground that Cajun lacked standing because it did not own any trade secrets.[6] To streamline the litigation, Cajun agreed not to oppose dismissal on that ground.[7] The Court granted the motion for partial summary judgment, dismissed Cajun's DTSA claim without prejudice, and administratively closed the case in anticipation of Cajun's moving to amend its complaint to assert a patent infringement claim.[8]

On June 4, 2018, the day before Cajun's ERIS patent issued (Patent No. 9,988,862, "the '862 patent"), Besco filed suit against Cajun ("Besco Lawsuit"), seeking a declaration that Cajun's patent was invalid, unenforceable, and/or not infringed by Besco.[9] On June 14, 2018, Cajun, its officers Shane Triche and Heath Triche, and a related entity, T2 Tools and Design, LLC, filed suit against Besco, re-alleging the same causes of action asserted in the Cajun I Lawsuit and adding a patent infringement claim ("Cajun II Lawsuit").[10] Besco answered asserting counterclaims that re-alleged the same causes of action it alleged in the Besco Lawsuit plus allegations of unfair and deceptive trade practices, fraudulent inducement, and breach or invalidity of contract.[11] The Court consolidated the Cajun I Lawsuit with the Besco Lawsuit and the Cajun II Lawsuit on August 15, 2018.[12]

## II.  PENDING MOTION

Cajun seeks to dismiss Besco's claims under the Declaratory Judgment Act in the Besco Lawsuit for lack of federal subject-matter jurisdiction.[13] Cajun asserts that jurisdiction does not

---

[5] *Id.* at 27-28 (Case No. 17-491).
[6] R. Doc. 49 (Case No. 17-491).
[7] R. Doc. 135 at 5 (Case No. 17-491).
[8] R. Doc. 136 (Case No. 17-491).
[9] R. Doc. 1 at 1, 8 (Case No. 18-5630).
[10] R. Doc. 1 (Case No. 18-5932); *see also* First Amended Complaint, R. Doc. 175 (Case No. 18-5932).
[11] R. Docs. 20 at 21-27 (Case No. 18-5932), 165 (Cases No. 17-491 & 18-5932).
[12] R. Doc. 11 (Case No. 18-5630).
[13] R. Docs. 142 (Case No. 17-491), 9 (Case No. 18-5630).

exist for Besco to seek relief under the Declaratory Judgment Act because, at the time Besco filed its complaint, the '862 patent had not yet issued, and thus no actual case or controversy existed.[14] Cajun argues that the "actual case or controversy" required by the Declaratory Judgment Act refers to the type of "cases" or "controversies" that are justiciable under Article III.[15] Cajun cites Federal Circuit law that has consistently held patent disputes to be justiciable only where a patent has formally issued because the existence of the patent confers the rights to be adjudicated, and that the subsequent issuance of a patent cannot cure the lack of jurisdiction.[16] Thus, some time before filing the present motion, Cajun asked Besco to dismiss its claims in the Besco Lawsuit and refile them in the Cajun II Lawsuit. Besco refused on the ground that the court in *Danisco U.S., Inc. v. Novozymes A/S*, 744 F.3d 1325 (Fed. Cir. 2014), found a case or controversy on the basis of pre-patent issuance conduct.[17] Urging that Besco's reliance on *Danisco* is highly unreasonable, Cajun asks the Court to award attorney's fees it has incurred in having to litigate what it perceives to be baseless claims.[18]

Besco admits having filed its complaint on the eve the '862 patent issued.[19] But Besco contends that its early filing was not premature because the "totality of the circumstances," as espoused by the court in *Danisco* in rejecting a "bright line" test discounting pre-issuance conduct, established a case or controversy at that time, even before the patent issued.[20] In particular, Besco points to its history of litigation with Cajun over the ERIS technology, Cajun's stated intent to file

---

[14] R. Docs. 142-1 at 4, 7 (Case No. 17-491), 9-1 at 4, 7 (Case No. 18-5630). Cajun suggests that Besco retrieved the patent number from the U.S. Trademark and Patent Office's Issue Notification, R. Docs. 142-2 (Case No. 17-491), 9-2 (Case No. 18-5630), and that the absence of the patent as an attachment to the complaint further confirms that Besco filed the suit prematurely. R. Docs. 142-1 at 6-7 (Case No. 17-491), 9-1 at 4, 7 (Case No. 18-5630).
[15] R. Docs. 142-1 at 4 (Case No. 17-491), 9-1 at 4 (Case No. 18-5630).
[16] R. Docs. 142-1 at 4-5 (Case No. 17-491), 9-1 at 4-5 (Case No. 18-5630).
[17] R. Docs. 142-1 at 7 (Case No. 17-491), 9-1 at 7 (Case No. 18-5630).
[18] R. Docs. 142-1 at 8-10 (Case No. 17-491), 9-1 at 8-10 (Case No. 18-5630).
[19] R. Doc. 10 at 7 (Case No. 18-5630).
[20] *Id.* at 4-7.

suit against Besco for patent infringement, and the imminence of the '862 patent ("scheduled to issue approximately six (6) hours later").[21] Besco also adds that dismissing its claims at this juncture would be a final, appealable judgment, and its appeal would prolong an already protracted series of suits.[22]

In reply, Cajun maintains that Besco's analysis of *Danisco* conflates Article III standing with standing under the Declaratory Judgment Act. Cajun contends that even though the "totality of the circumstances" are considered to assess standing following *Danisco*, the issuance of a patent remains a prerequisite for jurisdiction under Article III.[23] Despite Besco's threat to appeal, Cajun maintains that the swiftest course of action would be to grant Cajun's motion, observing that the appellate court would not uproot binding precedent to apply *Danisco* in the manner Besco upholds.[24] And, despite dismissal of Besco's claims in the Besco Lawsuit, Cajun notes that Besco's counterclaims in the Cajun II Lawsuit would remain.[25]

## III. LAW & ANALYSIS

### 1. 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to challenge a court's subject-matter jurisdiction. "[A] claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory authority or constitutional power to adjudicate' the claim." *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) (quoting *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012)). The party asserting jurisdiction bears the burden of proving that subject-matter jurisdiction exists. *Id.* "Lack of subject

---

[21] *Id.* at 6-7.
[22] *Id.* at 8.
[23] R. Doc. 147 at 1-2.
[24] *Id.* at 2-3.
[25] *Id.* at 3.

4

matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief." *Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 235 (5th Cir. 2018) (citing *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).

### 2. Justiciability

Article III of the Constitution of the United States specifies that a federal court's "power extends only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. __, 136 S. Ct. 1540, 1547 (2016). "A justiciable Article III controversy requires the party instituting the action to have standing and the issue presented to the court to be ripe." *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1337 (Fed. Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy," which developed in the jurisprudence "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Id.* (citation omitted). The standing "doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* (citations omitted). A plaintiff must establish standing as to each claim asserted. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. __, 137 S. Ct. 1645, 1650 (2017). The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). The plaintiff must demonstrate that it has "(1)

suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 at 560–61; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180-81 (2000)).

The doctrine of ripeness requires a two-fold evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 814 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). The first prong indicates ripeness "if the question presented is fit for judicial review, meaning it is entirely or substantially a question of law." *Teva Pharm. USA, Inc.*, 482 F.3d at 1337 (citing *Abbott Labs.*, 387 U.S. at 149-50). The second prong indicates ripeness if "withholding court consideration of an action causes hardship to the plaintiff where the complained-of conduct has an 'immediate and substantial impact' on the plaintiff." *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1295 (Fed. Cir. 2008) (quoting *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 171 (1967)). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *First Data Corp. v. Inselberg*, 870 F.3d 1367, 1375 (Fed. Cir. 2017) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The phrase 'case of actual controversy' 'refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Danisco*, 744 F.3d at 1329 (quoting *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007)) (internal citation omitted). As noted by the Supreme Court, the Declaratory Judgment Act

"does not enlarge the jurisdiction of the federal courts; it is procedural only." *Vaden v. Discover Bank*, 556 U.S. 49, 70 n.19 (2009); *see MedImmune*, 549 U.S. at 138. Therefore, "the existence of an actual controversy is an absolute predicate for declaratory judgment jurisdiction." *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 633-34 (Fed. Cir. 1991), *abrogated on other grounds by Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 95 (1993). It is well established that "jurisdiction of the court depends upon the state of things at the time of the action brought" and that "later events may not create jurisdiction where none existed at the time of filing." *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1331 (Fed. Cir. 2012) (quoting *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570-71 (2004), and *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed. Cir. 1996), respectively).

As noted by the Supreme Court in *MedImmune* and recognized by the Federal Circuit in *Danisco*, the court must analyze the "totality of the circumstances," rather than applying a "bright-line" rule, in determining the case-or-controversy requirement. *See MedImmune*, 549 U.S. at 127; *Danisco*, 744 F.3d at 1329-32; *see also Spectronics*, 940 F.2d at 634 ("The long established rule of law is that a declaratory judgment plaintiff must establish an actual controversy on the 'totality of the circumstances.'"). Under this analysis, a court must require that the "dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Danisco*, 744 F.3d at 1330 (quoting *MedImmune*, 549 U.S. at 127) (internal quotation omitted). In sum, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citing *MedImmune*, 549 U.S. at 127) (internal quotation omitted).

In applying these touchstones of justiciability, courts have long held that no actual controversy as to patent rights exists until a patent is formally issued by the U.S. Patent and Trademark Office ("PTO"). *See GAF Bldg. Materials*, 90 F.3d at 482 ("a threat is not sufficient to create a case or controversy unless it is made with respect to a patent that has issued before a complaint is filed"); *Spectronics*, 940 F.2d at 636-38 (refusing to "render[] a forbidden advisory opinion" declaring invalidity or noninfringement of a yet-to-be reissued patent, reasoning that "[b]efore a patent issues, and during the pendency of a patent application in the PTO, the courts have no claims by which to gauge an alleged infringer's conduct" (quotation omitted)); *JAT Wheels, Inc. v. DB Motoring Grp., Inc.*, 2016 WL 9453798, at *2 (C.D. Cal. Feb. 11, 2016) (dismissing plaintiff's patent infringement claim premised upon plaintiff's patent application); *City State Entm't, LLC v. Lemay*, 2014 WL 12603504, at *2-3 (E.D. Va. Sep. 24, 2014) (dismissing declaratory judgment action of invalidity, reasoning that "the Patent laws of the United States do not recognize a private right of action to challenge pending patents in U.S. District Courts"); *see also Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1131 (Fed. Cir. 2013) (reversing summary judgment of noninfringement on the ground of lack of case or controversy where patent had not yet issued). This consensus of authority hinges upon the principle that "[p]atent rights are created only upon the formal issuance of the patent." *GAF Bldg. Materials*, 90 F.3d at 483. Accordingly, "[a] patent application cannot be infringed." *Abbey v. Mercedes Benz of N. Am., Inc.*, 138 F. App'x 304, 307 (Fed. Cir. 2005). Where no patent exists, no actionable rights exist, and any court's opinion would be advisory only. *See MedImmune*, 549 U.S. at 142-43; *GAF Bldg. Materials*, 90 F.3d at 482 (where a patent has not issued, a "declaratory judgment of 'invalidity' or 'noninfringement' would

have … no legal meaning or effect"); *see also Hendrie v. Sayles*, 98 U.S. 546, 551 (1878) ("an inventor has no exclusive right to make, use, and vend the improvement until he obtains a patent for the invention … nor can the inventor maintain any suit for infringing the same before the patent is issued"). Moreover, the issuance of a disputed patent subsequent to the filing of the complaint, even if issued during the pendency of litigation, does not cure a court's lack of subject-matter jurisdiction. *GAF Bldg. Materials*, 90 F.3d at 483.

Cajun thus argues that this Court lacks subject-matter jurisdiction over the Besco Lawsuit because Besco filed its complaint the day before the '862 patent issued. Besco characterizes the "absolute predicate" of patent issuance as a "bright line rule" rejected by the Federal Circuit in *Danisco* and so contends that this Court should overlook the non-existence of the '862 patent at the time of filing suit in analyzing the totality of the circumstances to determine the existence of a case or controversy. But the Court's analysis of the totality of the circumstances cannot be so selective. In *Danisco*, the Federal Circuit did consider pre-patent issuance conduct relevant to establishing a case or controversy under the Declaratory Judgment Act. 744 F.3d at 1331-33. But there, the party invoking jurisdiction filed suit the same day the disputed patent issued. *Id.* at 1328-29. Thus, *Danisco* did not dispense with the prerequisite of patent issuance for jurisdiction over patent-related claims made under the Declaratory Judgment Act. It is the one "bright line rule" that remains.[26]

---

[26] The court in *LightMed Corp. v. Ellex Medical Pty. Ltd.*, 2014 WL 12586075, at *10 (C.D. Cal. May 20, 2014), dealt expressly with the interplay of the Federal Circuit's holdings in *GAF Building Materials* and *Danisco*, observing that "the Federal Circuit's analysis in *GAF*" had not been undermined by *Danisco* or any other intervening cases:
> Notably, *Danisco* involved declaratory judgment claims concerning an *issued patent*. Although the Federal Circuit explained that courts may look to pre-issuance conduct to determine whether there is a declaratory judgment case or controversy *after a patent has issued*, it did not say or even suggest that a declaratory judgment action could be brought based on a patent that has not yet been issued. As a result, *Danisco* is inapplicable here.

*Id.* (emphasis in original) (citation omitted).

While the history of litigation between Cajun and Besco involving the ERIS technology and Cajun's expressed intent to institute a patent infringement suit in the Cajun I Lawsuit are relevant to the case-or-controversy analysis, these actions are by no means the only actions considered in the totality of the circumstances. The Court simply cannot overlook the fact that Besco filed suit prior to the '862 patent's issuance. Given that the '862 patent had not yet issued when Besco filed suit, the pre-patent issuance conduct here constituted a mere "threat" on the day the complaint was filed, and the totality of the circumstances does not satisfy the "sufficient immediacy" necessary to create an actual case or controversy. *GAF Bldg. Materials*, 90 F.3d at 482. Therefore, the Court lacks subject-matter jurisdiction, and the Besco Lawsuit must be dismissed with prejudice.[27] *See Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 F. App'x 967, 971-72 (Fed. Cir. 2017) (dismissal with prejudice is proper where "it [is] plainly unlikely that the plaintiff [will be] able to cure the standing problem") (internal quotation omitted).

### 3. Attorney's Fees

Cajun invokes 35 U.S.C. § 285 as a basis for awarding it attorney's fees for its having to bring this motion. "The court may in exceptional cases award attorney fees to the prevailing party." *Id.* "[A]n 'exceptional' case is simply one that stands out from the others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The district court exercises

---

[27] Dismissal of the Besco Lawsuit at this juncture of this consolidated action will not stall the proceedings of the Cajun I or Cajun II Lawsuits. The Federal Circuit does not permit appeals of judgments disposing of fewer than all claims in a consolidated action unless the district court directs entry of final judgment with the requisite certification under Federal Rule of Civil Procedure 54(b). *Spraytex, Inc. v. DJS&T*, 96 F.3d 1377, 1382 (Fed. Cir. 1996) ("absent Rule 54(b) certification, there may be no appeal of a judgment disposing of fewer than all aspects of a consolidated case"). Because Besco's counterclaims in the Cajun II Lawsuit encompass the claims asserted in the Besco Lawsuit, the merits of Besco's dismissed claims will be addressed by those proceedings, making a Rule 54(b) certification inappropriate at this point for the instant dismissal.

discretion in determining whether a case is "exceptional" on a case-by-case basis, considering the totality of the circumstances in lieu of a "precise rule or formula." *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). The Supreme Court instructs the district court to consider factors such as those considered under a similar fee-shifting provision in the Copyright Act, "including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* n.6 (quoting *Fogerty*, 510 U.S. at 534 n.19).

Generally, an award of attorney's fees under 35 U.S.C. § 285 is made upon entry of final judgment. *See Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 930, 936 (Fed. Cir. 2003) ("As there is no final resolution of the dispute in this case, there is no 'prevailing party' as is required for an award of attorney fees under 35 U.S.C. § 285."). Thus, a district court may strike as premature a motion for attorney's fees under 35 U.S.C. § 285 made in the midst of a "still-live [patent] dispute." *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1264 (Fed. Cir. 2018). In a consolidated action, the Federal Circuit may consider a party's "pattern of misconduct" in the context of all patent-related cases, so that finding the entirety of a consolidated action exceptional implies that each individual case was exceptional. *See id.* at 1267, 1277.

Cajun asks the Court to examine Besco's actions in the isolated framework of the Besco Lawsuit. However, the Court must consider Besco's conduct in the totality of the circumstances – that is, in the context of the consolidated action as a whole. While the Besco Lawsuit is now being dismissed for lack of jurisdiction, the Court reserves judgment on the merits of the underlying patent dispute that continues in the Cajun I and Cajun II Lawsuits. An award of attorney's fees prior to a final judgment in the consolidated action is thus premature. *See Medichem*, 353 F.3d at 936.

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that the motion to dismiss (R. Doc. 142, Case No. 17-491, & R. Doc. 9, Case No. 18-5630), filed on behalf of Cajun Services Unlimited, d/b/a Spoked Manufacturing, is GRANTED in part, insofar as it seeks dismissal of the claims asserted by Benton Energy Service Company, d/b/a Besco Tubular, in civil action no. 18-5630, and DISMISSED in part as premature, insofar as it seeks an exceptional-case determination and attorney's fees, without prejudice to Cajun's right to seek such a determination and fees following final disposition of this consolidated case.

**IT IS FURTHER ORDERED** that all claims of Benton Energy Service Company, d/b/a Besco Tubular, in civil action no. 18-5630, are hereby DISMISSED WITH PREJUDICE, but without prejudice to Besco's right to pursue similar claims asserted as counterclaims in civil action no. 18-5932.

New Orleans, Louisiana, this 3rd day of April, 2019.

                                                             BARRY W. ASHE
                                                           UNITED STATES DISTRICT JUDGE