UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CAJUN SERVICES UNLIMITED,                    CIVIL ACTION
LLC, ET AL.
                                             NO. 17-491
VERSUS                                       c/w 18-5630 and 18-5932

BENTON ENERGY SERVICE                        SECTION M (2)
COMPANY dba BESCO TUBULAR,                   *Pertains to all cases*
ET AL.

## ORDER & REASONS

Before the Court is a motion to compel arbitration submitted by defendant Benton Energy

Service Company d/b/a Besco Tubular ("Besco"),[1] to which the plaintiffs Cajun Services

Unlimited, LLC d/b/a Spoked Manufacturing ("Cajun"), T2 Tools & Design, LLC, Shane

Triche, and Heath Triche (collectively, "Plaintiffs") respond in opposition,[2] and in support of

which Besco replies.[3]  Having considered the parties' memoranda, the record, and the applicable

law, the Court issues this Order & Reasons finding that Besco has waived arbitration.

## I.  BACKGROUND

This action is one among three consolidated lawsuits over rights to an elevator roller

insert system ("ERIS"), a technology used in drilling for oil.  On January 20, 2017, Cajun filed

suit against Besco (the "Cajun I Lawsuit"), alleging violation of the Defend Trade Secrets Act

("DTSA"), 18 U.S.C. §§ 1831, *et seq.*; violation of the Louisiana Uniform Trade Secrets Act

("LUTSA"), La. R.S. 51:1431, *et seq.*; violation of the Louisiana Unfair Trade Practices and

Consumer Protection Law ("LUTPA"), La. R.S. 51:1401, *et seq.*; bad faith breach of contract;

---

[1] R. Doc. 279.
[2] R. Doc. 287.
[3] R. Doc. 290.

fraud; and civil conspiracy.[4]  Cajun also sought injunctive relief and a declaratory judgment that

Cajun was the owner of all right, title, and interest to all improvements and modifications made

to the ERIS, its practice, and any inventions, patent applications, or patents that relate to the

ERIS.[5]  Besco filed a motion for partial summary judgment to dismiss Cajun's claim under the

DTSA on the ground that Cajun lacked standing because it did not own any trade secrets.[6]  To

streamline the litigation, Cajun agreed not to oppose dismissal on that ground.[7]  The Court

granted the motion for partial summary judgment, dismissed Cajun's DTSA claim without

prejudice, and administratively closed the case in anticipation of Cajun's moving to amend its

complaint to assert a patent-infringement claim.[8]

On June 4, 2018, the day before Cajun's ERIS patent issued (Patent No. 9,988,862, "the

'862 Patent"), Besco filed suit against Cajun (the "Besco Lawsuit"), seeking a declaration that

Cajun's patent was invalid, unenforceable, and/or not infringed by Besco.[9]  On June 14, 2018,

Cajun, its officers Shane Triche and Heath Triche, and a related entity, T2 Tools, filed suit

against Besco, re-alleging the same causes of action asserted in the Cajun I Lawsuit and adding a

patent-infringement claim (the "Cajun II Lawsuit").[10]  Besco answered asserting counterclaims

that re-alleged the same causes of action it alleged in the Besco Lawsuit plus allegations of unfair

and deceptive trade practices, fraudulent inducement, breach of oral contract, and invalidity of

contract.[11]  The Court consolidated the Cajun I Lawsuit with the Besco Lawsuit and the Cajun II

---

[4] R. Doc. 1 at 14-28.
[5] *Id.* at 27-28.
[6] R. Doc. 49.
[7] R. Doc. 135 at 5.
[8] R. Doc. 136.
[9] R. Doc. 1 at 1, 8 (Case No. 18-5630).
[10] R. Doc. 1 (Case No. 18-5932); *see also* First Amended Complaint, R. Doc. 175 (Case No. 18-5932).
[11] R. Docs. 20 at 21-27 (Case No. 18-5932) & 165 (Cases No. 17-491 & 18-5932).  The Court dismissed Besco's counterclaims that asserted invalidity of the '862 Patent based on any ground other than inventorship.  R. Doc. 240 (Case Nos. 17-491 & 18-5932).

Lawsuit on August 15, 2018.[12]  On April 3, 2019, the Court granted Cajun's motion to dismiss the Besco Lawsuit for lack of subject-matter jurisdiction, leaving only the claims asserted in the Cajun I and Cajun II Lawsuits.[13]  On June 7, 2019, the Court denied Besco's motions for partial summary judgment to dismiss Plaintiffs' breach-of-contract claim, trade-secret claims, and patent-infringement claims.[14]  On July 8, 2019, a four-day jury trial commenced,[15] which resulted in a jury verdict in favor all of Plaintiffs' remaining claims and against all of Besco's.[16]

## II.  PENDING MOTION

In its motion to compel arbitration, Besco seeks to have this Court vacate the jury verdict on all issues other than the finding of a valid and enforceable written agreement between Cajun and Besco (the "Rental Agreement"), dismiss the proceeding, and refer the matter to arbitration for determination in accordance with the Rental Agreement.[17]  Besco asserts that it has consistently challenged the validity of the Rental Agreement, and that it has maintained that if the Rental Agreement was ever adjudicated to be a valid and binding agreement enforceable against Besco, it would move to compel arbitration in accordance with its express provisions.[18]  As the jury found that the Rental Agreement is indeed valid, binding, and enforceable against Besco, Besco explains that if the Court adopts this finding, this will be the first adjudication on the issue, and so Besco now moves to compel arbitration.[19]  Besco argues that because the relevant provision of the Rental Agreement provides that "[a]ny dispute or difference arising out of or in connection with this contract shall be determined by [an arbitrator]," then not only

---

[12] R. Doc. 11 (Case No. 18-5630).
[13] R. Doc. 205.
[14] R. Doc. 241.
[15] R. Doc. 257.
[16] R. Doc. 267.
[17] R. Doc. 279-1 at 3.
[18] *Id.* at 1.
[19] *Id.* at 2-3.

Plaintiffs' breach-of-contract claims, but also each and every other claim made (including Plaintiffs' claims for fraud, unfair trade practices, trade-secret violations, and patent infringement) must be decided through arbitration because the claims arise out of the equipment rentals under the Rental Agreement.[20]  Besco further argues that it has not waived its right to compel arbitration because throughout the litigation it was challenging the existence of the Rental Agreement as a valid and enforceable agreement – an issue which must be decided by the court, not an arbitrator – and so Besco could not move to compel arbitration until the agreement was found to be valid and enforceable.[21]  Besco explains that, in its answers to the Cajun I Lawsuit,[22] it reserved until the completion of discovery the right to assert additional defenses; that it raised the issue of arbitration in its opposition to Cajun's motion for summary judgment,[23] which was the first motion seeking adjudication of the contract validity issue;[24] and that since then it maintained that if the Court found the Rental Agreement valid and enforceable, it would move for arbitration.[25]  Lastly, Besco argues that if the Court grants the motion to compel arbitration, the jury verdict should be sealed to prevent unduly prejudicing the arbitrator, and that the Court should rule that any findings by the jury are not binding on the arbitrator.[26]

In opposition, Plaintiffs first contend that Besco's motion contravenes fundamental principles underlying the judicial process, as it runs counter to federal courts' power to prevent their processes from becoming instruments of abuse, oppression, and injustice, and counter to the fundamental order and sequence of the judicial process.[27]  Next, they argue that Besco has

---

[20] *Id.* at 2.
[21] *Id.* at 4-6.
[22] R. Docs. 15 & 22.
[23] R. Doc. 60.
[24] *See* R. Doc. 50.
[25] R. Doc. 279-1 at 10-11.
[26] *Id.* at 11-12.
[27] R. Doc. 287 at 8-9.

waived any right to compel arbitration by failing to timely raise and move on it, by filing its own lawsuit, by seeking to litigate the case to Plaintiffs' prejudice, and by seeking to arbitrate patent-infringement claims, which are beyond the scope of the arbitration clause.[28]  Plaintiffs also argue that Besco should be estopped from relitigating to an arbitrator issues decided at trial.[29]  Lastly, Plaintiffs argue that Besco has failed to comply with the Rental Agreement's arbitration provision, defeating the purpose of arbitration to resolve claims quickly.[30]  They add that Besco has waived arbitration under Louisiana law, which governs the Rental Agreement.[31]

Besco replies that Plaintiffs failed to address its argument that because the validity of the Rental Agreement itself was in dispute, Besco could not move for arbitration earlier.[32]  It reiterates that all of Plaintiffs' other claims, including the patent-infringement and LUTPA claims, arise out of the Rental Agreement, and therefore, must be decided by arbitration.[33]

## III.    LAW & ANALYSIS

### A.  Legal Standard on Motion to Compel Arbitration

#### 1.    In General

There is a "strong federal policy in favor of enforcing arbitration agreements."  *N. Am. Specialty Ins. Co. v. First Millennium Constr., LLC*, 2015 WL 1842962, at *1 (E.D. La. Apr. 21, 2015) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).  The Federal Arbitration Act "requires courts to 'compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made.'"  *Id.* (quoting *Dean Witter*, 470 U.S. at 219).  The Supreme Court has made it clear that "any doubts concerning the scope of arbitrable issues

---

[28] *Id.* at 11-22.
[29] *Id.* at 22-24.
[30] *Id.* at 24.
[31] *Id.*
[32] R. Doc. 290 at 1-3.
[33] *Id.* at 4-5.

should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

"Courts conduct a two-step inquiry when considering motions to compel arbitration." *N. Am. Specialty Ins.*, 2015 WL 1842962, at *1 (citing *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)).

> First, whether the party has agreed to arbitrate the dispute is examined. This question itself is further subdivided; to determine whether the party has agreed to arbitrate a dispute, our court must ask: (1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement. If both questions are answered in the affirmative, our court then asks whether any federal statute or policy renders the claims nonarbitrable.

*Jones v. Halliburton Co.*, 583 F.3d 228, 233-34 (5th Cir. 2009) (internal quotation marks and citations omitted).

The parties do not contend that a federal statute or policy would bar arbitration, and so analysis is restricted to the first step. Here, the jury determined that the Rental Agreement is a valid contract between Cajun and Besco,[34] and the parties do not dispute that the Agreement contains an enforceable arbitration provision. Furthermore, Plaintiffs do not dispute that the contract claims are within the scope of the arbitration agreement.[35] Plaintiffs do dispute, however, whether the non-contract claims, and in particular, the patent-infringement and trade-secret claims, are within the scope of the arbitration clause.[36] Besco argues that because Plaintiffs' non-contract claims arise out of the equipment rentals, which the jury found were subject to the Rental Agreement, these claims must be arbitrated.[37] The Court need not decide whether these claims are arbitrable, however, because even assuming they are, as discussed

---

[34] R. Doc. 267.
[35] R. Doc. 287 at 21-22.
[36] *Id.* at 21.
[37] R. Doc. 279-1 at 2.

below, it is clear that Besco has waived arbitration in their regard – as with the contract claims.

## 2. Waiver

"Under [Fifth Circuit] precedent, a party waives its right to arbitrate if it (1) substantially invokes the judicial process and (2) thereby causes detriment or prejudice to the other party." *Janvey v. Alguire*, 847 F.3d 231, 243 (5th Cir. 2017) (quoting *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014)). The Fifth Circuit has declined to adopt a bright-line rule on the issue of waiver, which instead depends on the facts of the case. *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010).

Due to the federal policy favoring arbitration, there is a presumption against the finding of waiver. *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005) (citing *Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai*, 141 F.3d 234, 238 (5th Cir. 1998), and *Miller Brewing Co. v. Fort Worth Distrib. Co.,* 781 F.2d 494, 496-97 (5th Cir. 1986)). The burden to show that the right to arbitrate has been waived "falls even more heavily when the party seeking arbitration has included a demand for arbitration in its answer." *Id.* at 897 (internal citations omitted). Even if a defendant waits several months to move for arbitration, after asserting his right to arbitration in an answer, he may not have waived the right, as the plaintiff is thereby placed on notice of the defendant's "desire to arbitrate the matter." *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985). This "affords that party the opportunity to avoid compromising its position with respect to arbitrable and nonarbitrable claims." *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 347 (5th Cir. 2004) (quoting *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1161 (5th Cir. 1986)). On the other hand, while "the mere failure to assert the right of arbitration does not alone translate into a waiver of the right, such failure does bear on the question of prejudice, and may, along with other considerations,

require a court to conclude that waiver has occurred." *Petroleum Pipe Am. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) (quoting *Price*, 791 F.2d at 1161) (internal quotation marks omitted). "[W]here a party fails to demand arbitration and, in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, *i.e.*, prejudiced." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009) (internal citations and quotation marks omitted).

In the context of waiver, "prejudice means the inherent unfairness in terms of delay, expense or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate the same issue." *Jindal Saw*, 575 F.3d at 480 (citing *Republic*, 383 F.3d at 346). "[T]hree factors are particularly relevant to the prejudice determination: (1) whether discovery occurred relating to arbitrable claims; (2) the time and expense incurred in defending against a motion for summary judgment; and (3) a party's failure to timely assert its right to arbitrate." *Id.*

The Fifth Circuit has explained that to invoke the judicial process, a "party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Mirant*, 613 F.3d at 589 (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999)). "A party waives arbitration by seeking a decision on the merits before attempting to arbitrate," *Jindal Saw*, 575 F.3d at 480, but it "only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate." *Subway Equip.*, 169 F.3d at 328. When determining whether a defendant's actions substantially invoked the judicial process, the Fifth Circuit distinguishes between pleadings and motions which are "perfunctory," or in other words, only act as defensive measures, and those

which "invoke[] the judicial process to a greater degree." *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 2012 WL 5373462, at *6-7 (E.D. La. Oct. 30, 2012) (citing *Mirant*, 613 F.3d at 589). A defendant may act consistently with pursuing a right to arbitration, such as filing motions to dismiss "in a case involving several claims that [are] non-arbitrable … [as] it might be necessary for the defendant to file the motion both to sort out the claims before it can intelligently decide whether to arbitrate and to protect its rights in court if the arguably non-arbitrable claims do turn out to be non-arbitrable." *Id.* (quoting *Mirant*, 613 F.3d at 591-92).

## B. Analysis of Waiver

This case presents an unusual situation in which Besco, after receiving an adverse jury verdict finding the existence of a binding and enforceable contract, now argues that ***all*** of Plaintiffs' other claims must be sent to arbitration, despite not having made this argument previously.[38] Until this motion, Besco has argued that if the Rental Agreement was found to be a binding and enforceable contract, then Plaintiffs' ***breach-of-contract and damages claims*** would have to be arbitrated.[39] Because a party "only invokes the judicial process to the extent it litigates a ***specific claim*** it subsequently seeks to arbitrate," *Subway Equip.*, 169 F.3d at 328 (emphasis added), and Besco has acted differently in regards to the non-contract and contract claims, the issue of waiver will be analyzed separately as to each category of claims. Because it is useful for understanding the analysis of both categories, the Court first provides a thorough timeline of pertinent events:

---

[38] *See* R. Doc. 279-1 at 2-3.
[39] This was Besco's position even as late as when it filed its objection to Plaintiffs' proposed jury instructions on July 1, 2019. *See* R. Doc. 253 at 1 ("[I]n the event the jury determines that an enforceable written agreement exists between the parties …, the parties' dispute shall be subject to arbitration. Therefore, the jury cannot make any determination relating to whether the Defendant ***breached*** [the Rental Agreement] and/or whether the Plaintiff ***sustained any damages*** as a result of said breach.") (emphasis added).

- On January 17, 2017, Cajun filed the Cajun I Lawsuit against Besco (R. Doc. 1)
- On February 16, 2017, Besco filed its answer to the Cajun I Lawsuit (R. Doc. 15)
- On March 9, 2017, Cajun filed its first amended complaint in the Cajun I Lawsuit against Besco (R. Doc. 19)
- On March 29, 2017, Besco filed its answer to the first amended complaint in the Cajun I Lawsuit (R. Doc. 22)
- On April 7, 2017, the Court entered a scheduling order (R. Doc. 24), setting:
  - A discovery deadline of October 16, 2017
  - The final pretrial conference on November 16, 2017
  - Trial on December 4, 2017
- On June 26, 2017, the Court entered a protective order, as filed jointly by all parties, with one amendment (R. Doc. 26)
- On October 17, 2017, Besco filed a motion for partial summary judgment seeking dismissal of Cajun's trade-secret claims (R. Doc. 49)
- On October 17, 2017, Cajun filed a motion for summary judgment seeking grant of Cajun's claim for breach-of-contract and denial of Besco's breach-of-oral-contract claim (R. Doc. 50)
- On October 17, 2017, Cajun filed a motion for summary judgment seeking denial of Besco's counterclaims for unfair and deceptive trade practices and fraudulent inducement (R. Doc. 51)
- On October 24, 2017, Besco filed an opposition to Cajun's motion for summary judgment on its trade-practices and fraudulent-inducement counterclaims (R. Doc. 59)
- On October 24, 2017, Besco filed an opposition to Cajun's motion for summary judgment on the contract claims (R. Doc. 60)
- On November 16, 2017, the Court held a pretrial conference and reset trial for March 5, 2018 (R. Docs. 50 & 51)
- On January 23, 2018, the Court reset trial for May 29, 2018 (R. Doc. 100)
- On March 9, 2018, Besco filed an amended and supplemental counterclaim on recovery of overpaid amounts (R. Doc. 106)
- On May 18, 2018, the Court administratively closed the Cajun I Lawsuit (R. Doc. 136)
- On June 4, 2018, Besco filed the Besco Lawsuit against Cajun (R. Doc. 1, Case No. 18-5630)
- On June 14, 2018, Plaintiffs filed the Cajun II Lawsuit against Besco (R. Doc. 1, Case No. 18-5932)
- On August 13, 2018, Besco filed its answer to the Cajun II Lawsuit (R. Doc. 20, Case No. 18-5932)
- On September 27, 2018, the Court entered a new scheduling order (R. Doc. 162), setting:
  - A discovery deadline of June 7, 2019
  - The final pretrial conference on June 25, 2019
  - Trial on July 8, 2019
- On November 19, 2018, Plaintiffs filed their first amended complaint in the Cajun II Lawsuit (R. Doc. 175)

- On November 30, 2018, Besco filed its answer to the first amended complaint in the Cajun II Lawsuit (R. Doc. 180)
- On April 24, 2019, Besco filed:
  - A motion for partial summary judgment seeking dismissal of Plaintiffs' trade-secret claims (R. Doc. 216)
  - A motion for partial summary judgment seeking dismissal of Plaintiffs' breach-of-contract claim (R. Doc. 218)
  - A motion for summary judgment seeking dismissal of Plaintiffs' patent claims (R. Doc. 219)
- On June 25, 2019, the Court held the final pretrial conference (R. Docs. 242 & 245)
- On July 1, 2019, Besco filed its objections to Plaintiffs' proposed jury instructions (R. Doc. 253)
- On July 8, 2019, the jury trial commenced on all existing claims (R. Doc. 257)

### 1.    Non-Contract Claims

A party substantially invokes the judicial system when it affirmatively acts inconsistently with a desire to resolve a dispute through arbitration. *See Mirant*, 613 F.3d at 589. For example, in *Precision Builders, Inc. v. Olympic Group, L.L.C.*, after denial of their motion to dismiss for improper venue, defendants filed an answer and counterclaim, engaged in discovery, and answered an amended complaint, all without reserving or asserting a right to arbitrate. 642 F. App'x, 395, 400-01 (5th Cir. 2016). Defendants asserted their arbitral rights only two weeks before trial. *Id.* These actions, the Fifth Circuit explained, "went far beyond [the defendants] simply defending themselves." *Id.* Similarly, in *Price*, the Fifth Circuit concluded that the defendant waived arbitration as it "initiated extensive discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pre-trial deadlines, all without demanding arbitration." 791 F.2d at 1159, 1163 (citation omitted).

As the timeline above demonstrates, Besco has repeatedly invoked the Court's litigation machinery on all of Plaintiffs' non-contract claims. It has sought a resolution of Plaintiffs' trade-secret, unfair-trade-practices, fraud, and patent-infringement claims, as well as its own claims against Plaintiffs, through the judicial system, without arguing that any of these claims should be

resolved through arbitration until now.  When Besco belatedly mentioned arbitration in October 17, 2017, it only referred to such a right in regards to Plaintiffs' breach-of-contract and damages claims.[40]  Having received an adverse verdict on all its non-contract claims, Besco cannot seek to have it both ways and try to arbitrate these same claims it has actively litigated, even if they were arbitrable.[41]  Courts do not favor such attempts to game the system. *See, e.g., Nicholas*, 565 F.3d at 911 ("[Movant]'s belated decision to seek arbitration is particularly troubling given that it came on the heels of [an] adverse ruling."); *Baricuatro v. Indus. Personnel & Mgmt. Servs., Inc.*, 927 F.2d 348 (E.D. La. 2013) ("[M]ovants made a strategic decision to hold off filing their motion to compel arbitration so as to take their chance first with the Court. … Such tactical maneuvers are not viewed with favor.").  *But see Cargill Ferrous Int'l v. Sea Phoenix MV*, 325 F.3d 695, 701 (5th Cir. 2003) ("Under the facts of this case, it is clear [movant] is not gaming the system by seeking a win at trial, and in the case of loss, anticipating a second bite at the apple through arbitration.  Rather, [movant] has preferred arbitration since the time [plaintiff] filed its complaint.").

Plaintiffs have undoubtedly been prejudiced by Besco's substantial invocation of the judicial process on the non-contract claims.  Besco now asserts that "any prejudice caused to the Plaintiffs in terms of delay, expense, or damage suffered are all self-inflicted by the Plaintiffs' choice to proceed before a jury."[42]  Yet this is not the correct prejudice inquiry – if it were, no defendant could ever waive its arbitral rights.

Besco argues that it did not delay or waive arbitration because it included a general right to file additional defenses in its answers in the Cajun I Lawsuit, it did not have many of the

---

[40] *See* R. Docs. 60 at 15 n.1; 20 at 18 (Case No. 18-5932); 180 at 21; 218-1 at 14 n.2; 253 at 1-2.
[41] While the Court does not now decide this issue, the arbitrability of the non-contract claims appears doubtful since it is questionable that they arise out of the Rental Agreement and thus lie within its scope.
[42] R. Doc. 279-1 at 7.

documents evidencing the Rental Agreement until discovery was conducted, and it asserted arbitration the first time Cajun sought adjudication of its breach-of-contract claim.[43] Besco explains that it did not move for arbitration until now because it denied the existence of a valid and binding written agreement and consistently raised arbitration throughout the litigation.[44] But Besco fails to explain how it did not prejudice Plaintiffs by repeatedly seeking decisions on the merits of the non-contract claims, and engaging in discovery of these issues, without putting Plaintiffs on notice that it would even **_possibly_** seek arbitration of any non-contract claim until the final pretrial conference on June 25, 2019, over two years after the initial complaint was filed in January 2017.[45] Plaintiffs have incurred significant expenses in having to engage in discovery and litigate Besco's multiple counterclaims, motions for summary judgment, and own lawsuit on non-contractual issues Besco now seeks to arbitrate. As such, notwithstanding the presumption against waiver of arbitration, Besco has clearly waived its rights to arbitrate the non-contract claims, even assuming some or all were arbitrable.

### 2. Contract Claims

The Court now turns to whether Besco waived its arbitral rights on Plaintiffs' breach-of-contract and damages claims. Plaintiffs do not dispute that these claims are arbitrable. Besco argues that because under _Will-Drill Resources, Inc. v. Samson Resources Co._, 352 F.3d 211 (5th Cir. 2003), a dispute over the very existence of an arbitration agreement is an issue for the courts to decide, and it has always disputed the existence of the Rental Agreement, it could not move to

---

[43] _See id._ at 9-10.

[44] _Id._ at 10-11.

[45] Plaintiffs explain that it was at the June 25, 2019 pretrial conference that Besco's counsel for the **_first time_** argued that trial should only proceed on the issue of contract validity and its counterclaims, so that it might seek arbitration of all other issues if the Rental Agreement were found to be valid. R. Doc. 287 at 7-8. Even after this, though, when Besco laid out its legal argument in its objection to Plaintiffs' proposed jury instructions, Besco only argued that the breach-of-contract and damages claims should be left for arbitration. R. Doc. 253 at 1-2.

compel arbitration until the Rental Agreement was found to be valid and binding.[46]  Besco is

correct that the validity of the Rental Agreement is an issue that belongs to courts, not arbitrators.

*See Will-Drill*, 352 F.3d at 219 ("[W]here a party attacks the very existence of an agreement, …

the courts must first resolve that dispute.").  Furthermore, when a defendant disputes the

existence of an arbitration agreement, it does not have to elect whether to "admit the contract

was in effect and call for arbitration or deny the viability of the contract and defend in court."

*See Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 929 (5th Cir. 1970)

("[I]t loses sight of the purposes and effects of arbitration, and of the desirability of the initial

judicial determination, to treat the court proceedings as a sort of judicial tightrope which the

party seeking arbitration walks at his peril.").  This does not mean, though, that Besco "***could not***

… waive any rights regarding the interpretation or application of the disputed Rental

[Agreement] … prior to an actual determination" that the Rental Agreement was valid, as Besco

asserts.[47]

In *General Guaranty*, the Fifth Circuit held that a defendant who disputed that a valid

agreement existed did not waive its arbitral rights though it waited to move to compel arbitration

until after it filed an answer to the original complaint, an answer to the amended complaint, and a

motion seeking summary judgment on dismissal of the complaint, and in the alternative, a stay

pending arbitration.  427 F.2d at 926-30.  The court emphasized, however, that the defendant had

asserted its arbitral rights in its answers, that by filing a counterclaim it was only protecting its

rights were the claims held to be nonarbitrable, and that when it filed its motion seeking

summary judgment, it specifically moved for arbitration in the alternative.  *Id.* at 928-30.  The

court contrasted this situation with those in which a defendant files a counterclaim ***before*** raising

---

[46] R. Doc. 279-1 at 4-5.
[47] *See id.* at 7-8 (emphasis added).

a demand for arbitration, describing this "as defendant's irrevocably locking litigious horns." *Id.* at 929 (citation omitted).

The Fifth Circuit faced a similar situation in *Unity Communications Corp. v. Cingular Wireless*, 256 F. App'x 679, 681-82 (5th Cir. 2007). There, the defendant also disputed the validity of the agreement at issue, but did not assert arbitral rights until ***after*** it had participated in discovery, moved to dismiss the suit, moved for summary judgment, and took an interlocutory appeal of that motion. *Id.* at 681. The court held that by taking such actions before giving notice of its intent to seek arbitration, the defendant substantially invoked the judicial process. *Id.* Furthermore, the plaintiff was prejudiced by the time and expense required to respond to the defendant's motion for summary judgment. *Id.* Notably, the Fifth Circuit explained that "[w]hile [the defendant's] attempt to litigate the validity of the … agreement [did] not by itself create prejudice, it was prejudicial for [the defendant] to litigate the validity of the agreement without putting [the plaintiff] on notice that it would seek arbitration on the merits if the agreement was found to be still in force." *Id.* at 682.

Finally, in *Republic Insurance Co. v. PAICO Receivables, LLC*, the insurance company ("Republic") sought a declaration that an assignment under an agreement with an arbitration provision was invalid. 383 F.3d at 343. In response to counterclaims, Republic did not assert a right to arbitrate in its affirmative defenses, and then went on to actively participate in discovery, which encompassed all claims and counterclaims. *Id.* When the PAICO Receivables, LLC ("PRLLC") filed a motion for a protective order to limit discovery to the issue of the assignment validity, Republic opposed the motion, arguing that all the issues were before the court and properly the subject of discovery. *Id.* The parties then filed cross-motions for summary judgment on all the issues in the amended complaint, and the district court declared the

assignment valid.  *Id.* at 344.  Republic later filed a motion in limine, still not indicating an intent to arbitrate the counterclaims.  *Id.*  Finally, days before the trial was originally scheduled to begin, Republic filed a motion to stay and compel arbitration.  *Id.*  The Fifth Circuit contrasted Republic's behavior with that of the defendant in *General Guaranty*, noting that "Republic did not assert its right to arbitrate in a timely fashion, which prevented the district court from limiting the judicial proceedings to the threshold question of whether a valid agreement to arbitrate exists."  *Id.* at 345.  The Fifth Circuit emphasized that Republic had chosen to actively oppose the protective order, therefore engaging in discovery on all issues, and so it "chose to invoke the judicial process with respect to all of the issues …, including the issues which it now [sought] to arbitrate."  *Id.* at 345-46.  Because discovery was not limited to nonarbitrable claims, and Republic "forced PRLLC to incur all of the costs associated with litigating its defenses and counterclaims," PRLLC was sufficiently prejudiced by Republic's delay in seeking arbitration to support a finding of waiver.  *Id.* at 346-47.

Unlike the defendant in *General Guaranty,* but like the defendant in *Unity Communications* and Republic in *Republic Insurance*, Besco did not assert any arbitral rights in its answers and defenses to the Cajun I Lawsuit.  Besco blames this omission on Cajun's failure to include a copy of the Rental Agreement in the original complaint and that only "one delivery ticket containing the Rental [Agreement] was included in a 58 page exhibit attached to the First Amended Complaint."[48]  But the blame game will not work for Besco.  The original and first amended complaints both make explicit reference to the Rental Agreement.  The jury found that the Rental Agreement was a valid and binding contract between Cajun and Besco, and so Besco should have been aware of the Rental Agreement and its terms before the lawsuit commenced.

---

[48] *Id.* at 9-10.

Regardless, this argument is unavailing because Besco itself admits that a copy of the Rental Agreement was included as an attachment to the first amended complaint – yet its answer contained no reference to arbitration.[49]  Besco did not need to conduct more discovery to become aware of the arbitration provision and its right to demand arbitration long before it did so.

Furthermore, Besco did include counterclaims for breach of oral contract and fraudulent inducement, among others, in its original answer.[50]  "Fifth Circuit precedent does not require that a defendant litigate **identical** claims to invoke the judicial process, but rather 'a **specific** claim it subsequently wants to arbitrate.'"  *Vine v. PLS Fin. Servs., Inc.*, 226 F. Supp. 3d 719, 728 (W.D. Tex. 2016) (quoting *Subway Equip.*, 169 F.3d at 328) (emphasis in original).  These claims all related to the same dispute over payment for use of the ERIS.  And, "[b]y seeking to prove [its] own allegations before demanding arbitration, rather than simply denying [Cajun's] allegations, [Besco] engaged the judicial process."  *See MC Asset Recovery LLC v. Castex Energy, Inc.*, 2009 WL 900745, at *7 (N.D. Tex. Apr. 3, 2009).

Besco also engaged in discovery on contract claims before giving notice of its intent to arbitrate.  It did not attempt to limit such discovery to the validity of the Rental Agreement, therefore acting like Republic when it opposed PRLLC's motion for a protective order in *Republic Insurance.*  383 F.3d at 347.  Besco explains that it "simply engaged in discovery to understand the full scope of Plaintiffs' claims and review the evidence to be admitted in this matter."[51]  But "[p]arties cannot enjoy the benefits of federal discovery, and then, after doing so, seek to enforce a decision through private resolution."  *Janvey*, 847 F.3d at 244.  In *Janvey*, the

---

[49] *But see Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 n.3 (5th Cir. 1995) (noting that even if movant should have known the dispute was arbitrable previously, it did not waive arbitration when it filed its motion "shortly after it *actually* discovered that the dispute was arbitrable") (emphasis in original).

[50] R. Doc. 15 at 18.

[51] R. Doc. 279-1 at 11.

defendant moved to dismiss, filed an initial answer and amended answer, sent written discovery, and answered discovery before seeking arbitration, leading the court to conclude that the defendant had substantially invoked the judicial process. *Id.* at 243-44. Besco's own exhibits attached to its opposition to Cajun's motion for summary judgment, where it first asserted arbitration, show that it had conducted discovery – including depositions – on information related directly to the issue of breach of the Rental Agreement and damages.[52] Thus, Besco engaged in discovery explicitly directed toward the merits and not solely to determine arbitrability. *Cf. Electrostim Med. Servs.*, 2012 WL 5373462, at *8.

Seven months after its answer to the first amended complaint in the Cajun I Lawsuit, after discovery was closed under the original scheduling order, and less than a month-and-a-half before trial was scheduled to begin on December 4, 2017, Besco finally put Cajun on notice of its plan to assert arbitral rights regarding the contract claims in its opposition to Cajun's motion for summary judgment on October 24, 2017.[53] Even then, Besco only vaguely asserted its rights in a footnote. Cajun should have been on notice that Besco intended to move for arbitration if the Rental Agreement was held valid then, and if not, soon after, because the first pretrial order, filed a month later, listed the issues of arbitration and waiver as contested issues of law.[54] After October 2017, Besco did consistently mention its arbitral rights in regard to the contract claims as it continued to dispute the existence of the Rental Agreement and litigate the other claims.

The Court first emphasizes that during the seven months preceding any notice of an intent to arbitrate, Besco filed two answers with affirmative defenses and counterclaims, filed a joint motion for a protective order (without seeking to limit discovery to the issue of contract validity),

---

[52] *See* R. Docs. 60-9; 60-11; 60-12; 60-13; 60-14; 60-16; 60-17; 60-18.
[53] *See* R. Doc. 59 at 15 n.1.
[54] R. Doc. 90 at 54.

engaged in full-fledged discovery, and filed a motion for summary judgment on Cajun's trade-secret claims.[55]  Taken together, Besco's actions before mentioning its arbitral rights constitute overt acts which evince a desire to resolve the dispute through litigation rather than arbitration.

Second, even after it finally gave its vague notice of an intent to arbitrate the contract claims, Besco continued to act inconsistently with this intent.  Besco's behavior is like that of the movant in *Miller Brewing*, who waited eight months after the commencement of the suit to announce an intent to arbitrate, but thereafter did not take steps toward effecting its intent, so that while its demand lay dormant for three-and-a-half years, it continued pursing legal remedies, thus clearly waiving its right to arbitrate.  *See* 781 F.2d at 497.  Besco's hands were not tied by its denial of the existence of the Rental Agreement, as it tries to argue.  Besco could have, for example, acted like the defendant in *General Guaranty*, who specifically moved for arbitration ***in the alternative*** when it moved for summary judgment on the issue of contract validity.  427 F.2d at 926, 928.  It could have moved to bifurcate the trial, or requested phased litigation, or in some way asked the Court to first determine the issue of contract validity, before proceeding to any of the other issues, including the breach-of-contract and damages claims, in order to conserve judicial resources and avoid prejudicing Plaintiffs.  Instead, Besco hid its intent to seek arbitration behind its denial of the Rental Agreement's existence, and continued to litigate, only to spring its demand upon the Court after receiving an adverse ruling.

Plaintiffs were prejudiced by Besco's actions before it gave notice of its intent to seek arbitration.  As Besco failed to reserve its rights in either of its answers to the Cajun I Lawsuit,

---

[55] In *Alim v. KBR, Inc.*, the court held that the defendant's motion to dismiss a claim did not substantially invoke the judicial process for the purposes of waiver because the defendant specifically exempted this claim from its motion to compel arbitration.  2012 WL 12857421, at *9 (N.D. Tex. Mar. 15, 2012).  Unlike that defendant, Besco included the trade-secret claims in its motion to compel arbitration.  By including this issue, for which it clearly invoked the judicial process before giving notice of its intent to arbitrate, among the issues it now seeks to arbitrate, Besco weakened its argument that it did not waive its arbitral rights.

Plaintiffs' burden to show prejudice is lighter than it would be otherwise. *See Nicholas*, 565 F.3d at 910. Cajun was forced to incur legal expenses defending against Besco's counterclaims and Besco's discovery on the contract claims in the Cajun I Lawsuit. While "discovery relating to nonarbitrable subject matter cannot prejudice a party opposing arbitration," such that discovery relating to the **existence** of the Rental Agreement could not prejudice Cajun, discovery here related to **all** of Cajun's claims, including the breach-of-contract and damages claims. *Price*, 791 F.2d at 1159. Moreover, it was prejudicial for Besco to engage in discovery on the issue of the existence and validity of the Rental Agreement without giving notice of its intent to assert arbitration. *See Unity Comms. Corp.*, 256 F. App'x at 682.

Plaintiffs also continued to be prejudiced by Besco's delay after Besco gave its vague notice. Even if Cajun was somewhat aware of Besco's intent as of October 2017, Besco's total inaction on its intent to seek arbitration, while otherwise continuing to litigate, made it unreasonable for Besco to expect Plaintiffs to believe Besco actually intended to move for arbitration. Plaintiffs were forced to incur significant costs and expenses for almost two more years in this matter, which included litigation of the contract claims.

In conclusion, Besco substantially invoked the judicial process to Plaintiffs' prejudice on the contract claims as well as the non-contract claims, waiving any right to arbitration under the Rental Agreement.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motion to compel arbitration (R. Doc. 279) is DENIED.

New Orleans, Louisiana, this 19th day of November, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE