UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CAJUN SERVICES UNLIMITED, LLC, ET AL. | CIVIL ACTION |
| VERSUS | NO. 17-491<br>c/w 18-5630 and 18-5932 |
| BENTON ENERGY SERVICE COMPANY dba BESCO TUBULAR, ET AL. | SECTION M (2)<br>*Pertains to all cases* |

## ORDER & REASONS

Before the Court is a motion for declaratory judgment and injunctive relief, including a declaration of patent infringement, filed by plaintiffs Cajun Services Unlimited, LLC d/b/a Spoked Manufacturing ("Cajun"), T2 Tools & Design, LLC, Shane Triche, and Heath Triche (collectively, "Plaintiffs").[1] Defendant Benton Energy Service Company d/b/a Besco Tubular ("Besco") opposes the motion.[2] Plaintiffs replied in support of the motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

### I. BACKGROUND

#### A. Procedural Background

This action is one among three consolidated lawsuits over rights to an elevator roller insert system ("ERIS"), a technology used in drilling for oil. On January 20, 2017, Cajun filed suit against Besco (the "Cajun I Lawsuit"), alleging violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1831, *et seq.*; violation of the Louisiana Uniform Trade Secrets Act ("LUTSA"), La. R.S. 51:1431, *et seq.*; violation of the Louisiana Unfair Trade Practices and

---
[1] R. Doc. 283.
[2] R. Doc. 286.
[3] R. Doc. 296.

Consumer Protection Law ("LUTPA"), La. R.S. 51:1401, *et seq.*; bad faith breach of contract; fraud; and civil conspiracy.[4] Cajun also sought injunctive relief and a declaratory judgment that Cajun was the owner of all right, title, and interest to all improvements and modifications made to the ERIS, its practice, and any inventions, patent applications, or patents that relate to the ERIS.[5] Besco filed a motion for partial summary judgment to dismiss Cajun's claim under the DTSA on the ground that Cajun lacked standing because it did not own any trade secrets.[6] To streamline the litigation, Cajun agreed not to oppose dismissal on that ground.[7] The Court granted the motion for partial summary judgment, dismissed Cajun's DTSA claim without prejudice, and administratively closed the case in anticipation of Cajun's moving to amend its complaint to assert a patent-infringement claim.[8]

On June 4, 2018, the day before Cajun's ERIS patent issued (U.S. Patent No. 9,988,862, "the '862 Patent"), Besco filed suit against Cajun (the "Besco Lawsuit"), seeking a declaration that Cajun's patent was invalid, unenforceable, and/or not infringed by Besco.[9] On June 14, 2018, Cajun, its officers Shane Triche and Heath Triche, and a related entity, T2 Tools, filed suit against Besco, re-alleging the same causes of action asserted in the Cajun I Lawsuit and adding a patent-infringement claim (the "Cajun II Lawsuit").[10] Besco answered asserting counterclaims that re-alleged the same causes of action it alleged in the Besco Lawsuit plus allegations of unfair and deceptive trade practices, fraudulent inducement, breach of oral contract, and invalidity of

---

[4] R. Doc. 1 at 14-28.
[5] *Id.* at 27-28.
[6] R. Doc. 49.
[7] R. Doc. 135 at 5.
[8] R. Doc. 136.
[9] R. Doc. 1 at 1, 8 (Case No. 18-5630).
[10] R. Doc. 1 (Case No. 18-5932); *see also* First Amended Complaint, R. Doc. 175 (Case No. 18-5932).

contract.[11] The Court consolidated the Cajun I Lawsuit with the Besco Lawsuit and the Cajun II Lawsuit on August 15, 2018.[12] On April 3, 2019, the Court granted Cajun's motion to dismiss the Besco Lawsuit for lack of subject-matter jurisdiction, leaving only the claims asserted in the Cajun I and Cajun II Lawsuits.[13] On June 7, 2019, the Court denied Besco's motions for partial summary judgment to dismiss Plaintiffs' breach-of-contract claim, trade-secret claims, and patent-infringement claims.[14] On July 8, 2019, a four-day jury trial commenced,[15] which resulted in a jury verdict in favor of Plaintiffs and against Besco on all claims.[16]

Following trial, the Court established a briefing schedule for all post-verdict/prejudgment motions the parties indicated they would file.[17] Ahead of the established schedule, Plaintiffs filed a motion for injunctive relief to prevent dissipation of assets and for writ of attachment,[18] and then on August 14, 2019, they filed this motion and one for attorney's fees.[19] In addition, Besco filed a motion to compel arbitration,[20] which the Court denied on November 19, 2019.[21]

---

[11] R. Docs. 20 at 21-27 (Case No. 18-5932) & 165 (Cases No. 17-491 & 18-5932). The Court dismissed Besco's counterclaims that asserted invalidity of the '862 Patent based on any ground other than inventorship. R. Doc. 240 (Case Nos. 17-491 & 18-5932).
[12] R. Doc. 11 (Case No. 18-5630).
[13] R. Doc. 205.
[14] R. Doc. 241.
[15] R. Doc. 257.
[16] R. Doc. 267.
[17] R. Doc. 272.
[18] R. Doc. 273.
[19] R. Doc. 281.
[20] R. Doc. 279.
[21] R. Doc. 297. On December 19, 2019, Besco filed a notice of its appeal of this decision to the Federal Circuit. R. Doc. 299. Whether a district court retains jurisdiction over a case upon an interlocutory appeal of an order denying a motion to compel arbitration is the subject of a circuit split. *See Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 907 (5th Cir. 2011) (collecting cases). The Federal Circuit has yet to weigh in, although in addressing a completely different issue (*viz.*, the appropriateness of summary disposition of an appeal), it has cited with what might be read as approval the Seventh Circuit's holding that such an appeal divests the district court of jurisdiction. *See Ecolab, Inc. v. Gardner Mfg. Co.*, 56 F. App'x 484, 485 (Fed. Cir. 2003) (citing *Bradford-Scott Data Corp. v. Physician Comput. Network*, 128 F.3d 504, 506 (7th Cir. 1997)). Because the Federal Circuit's observation is *dictum* and was made without the benefit of the Fifth Circuit's analysis of the issue in *Weingarten*, and because this Court lies within the Fifth Circuit, the Court will follow the Fifth Circuit's holding that an appeal from an interlocutory order denying a motion to compel arbitration does not divest it of jurisdiction to address the matters that remain before the Court, including the pending post-verdict/prejudgment motions, entry of judgment, and post-judgment motions. *See Weingarten*, 661 F.3d at 907-10.

B. **Factual Background**

1. **The ERIS Technology**[22]

In the oil-and-gas industry, segments (*i.e.*, a single joint of pipe) or stands (*i.e.*, generally two or three joints of pipe) of tubulars are threaded together to form tubular strings that are inserted into a wellbore drilled into the earth. Elevators are used to grip and secure each segment or stand to lift the segment or stand into position for threading the tubulars together. Threading is typically performed by rotating the tubular in the elevator with a power tong or by rotating the entire elevator on a swivel.

Difficulties can be encountered with maintaining proper thread integrity of the connections while making up the segment or stand to the string of tubulars. Because these difficulties posed serious cost and safety concerns, there was a need in the industry for a device that would allow tubulars to rotate freely within a closed elevator while supporting the weight of the tubular. Plaintiffs maintain that the ERIS, which embodies the invention disclosed in the '862 Patent, provides a solution to this problem.

2. **The Business Relationship Between Plaintiffs and Besco**[23]

Besco is an oilfield service company specializing in oilfield pipe running services that utilizes specialized tubular handling equipment operated by Besco's personnel. Besco developed a system for compensating or offsetting suspended tubular goods during pipe installation and removal called the Bail Assisted Tubular Thread System, or "BATT System," which Besco patented (U.S. Patent No. 9,816,333, "the '333 Patent"). To accommodate applications of the BATT System where vertical space within a drilling derrick was limited, Besco decided to utilize

---

[22] For a more complete discussion of the ERIS technology, *see* R. Docs. 210 at 1-3 & 241 at 3-5 and the documents cited therein.
[23] For a more complete discussion of this business relationship, *see* R. Doc. 241 at 5-11 and the documents cited therein.

a hydraulic single joint elevator (the "Tesco elevator")[24] as part of the BATT System in order to shorten the overall length of the equipment. In an attempt to resolve the problem of maintaining the thread integrity of the tubular, Besco utilized a specialized hydraulic swivel that allowed the entire Tesco elevator, as well as any tubular gripped therein, to fully rotate. According to Besco, the solution was not optimal because the lines supporting the swivel and the elevator had a tendency to wrap and tangle.

Besco maintains that its operations manager, Jamie Lovell, conceived of a solution to permit the tubular to spin inside of the Tesco elevator by installing rollers into the die insert. After he discussed the problem and possible solution with Shane and Heath Triche, the managers of Cajun, Cajun created drawings and fabricated components of the roller inserts customized for Besco's BATT System and the Tesco elevators. These roller inserts essentially constituted the ERIS. Together with Besco, Plaintiffs successfully tested the ERIS, and then in a series of conversations, it became evident that there was a dispute over who invented the ERIS and was entitled to its ownership. Notwithstanding the dispute, Besco entered into an arrangement with Cajun (the "Rental Agreement") by which it rented the ERIS tools to be used on projects related to one of Besco's oil-and-gas customers. Eventually, Cajun patented the ERIS (the '862 Patent).

While Cajun was renting the ERIS tools to Besco, Besco reverse engineered and copied the ERIS, creating two versions of its own ERIS, one using a second set of lower rollers (the "Accused First Design Products") and the second using filler pads instead (the "Accused Second Design Products"), which Plaintiffs contend infringe the '862 Patent. According to Plaintiffs, Besco rented the infringing tools to its customers while also failing to pay Cajun the amounts due under the Rental Agreement.

---

[24] The single joint elevator Besco utilized was manufactured by Tesco Corporation.

## C. Plaintiffs' Claims and the Jury Verdict

In this lawsuit, Cajun seeks injunctive relief to stop Besco from using its alternative designs; a declaratory judgment that it owns the ERIS and that Besco assign to it all right, title, and interest to all improvements and modifications made to the ERIS, as well as any information conceived of and/or reduced to practice that in any way relates to the ERIS; a declaratory judgment that Besco infringed the '862 Patent; and damages for (1) willful infringement of the '862 Patent; (2) violation of the DTSA; (3) violation of the LUTSA; (4) violation of the LUTPA; (5) bad faith breach of contract; and (6) fraud. The other Plaintiffs join Cajun's claims under the DTSA and LUTSA.[25]

After trial, the jury determined that there was a written agreement between Cajun and Besco for rental of the ERIS tool, *i.e.,* the Rental Agreement, and that Besco breached the agreement and did so in bad faith, awarding $866,103.10 in damages for breach of contract and another $552,000.00 in consequential damages for Besco's bad faith breach. The jury also found that Cajun was the owner of all right, title, and interest to all improvements and modifications made to the ERIS to the exclusion of all others. In addition, the jury found that Besco's conduct amounted to fraud, violated the LUTPA, violated the DTSA and LUTSA willfully and maliciously, and infringed the '862 Patent. As a result, the jury awarded $1.5 million in damages for these violations and infringement and another $2 million in exemplary damages for willful and malicious violation of the DTSA.[26]

## D. Stipulations

On September 19, 2018, ten months before the trial, the parties had submitted a joint stipulation in which Besco agreed not to make, use, sell, or offer for sale the Accused First Design

---

[25] R. Doc. 175.
[26] R. Doc. 267.

Products during the litigation, and Cajun agreed it would not seek a preliminary injunction for infringement of the '862 Patent against Besco regarding its own version of ERIS having lower or second rollers (the "Original Stipulation").[27] After the trial, on August 14, 2019, Besco unilaterally submitted a post-trial stipulation in which it agrees and stipulates that it will not manufacture, use, sell, or offer for sale either the Accused First Design Products or Accused Second Design Products (collectively, the "Accused Products") in the future, without admitting or acknowledging liability or infringement of the '862 Patent, and upon the condition that its stipulation will automatically terminate if any court or arbitrator finds that either of the Accused Products does not infringe the '862 Patent or that the '862 Patent is invalid or owned (in whole or in part) by Besco ("Besco's Post-Trial Stipulation").[28]

## II. PENDING MOTION

Having received a favorable jury verdict, Plaintiffs now seek a declaratory judgment against Besco's Accused First Design Products and other injunctive relief.[29] Plaintiffs assert that Besco's Post-Trial Stipulation is an attempt to narrow the scope of the relief to which they are entitled.[30] Plaintiffs argue that with respect to the declaratory judgment of infringement, the issue is not whether the Accused First Design Products have been used after the issuance of the '862 Patent, but whether Plaintiffs have a reasonable apprehension of future infringement.[31] Plaintiffs submit that they have shown, and that Besco has not contradicted, that the Accused First Design Products literally infringe the '862 Patent because they practice every single limitation of the asserted claims.[32] Plaintiffs state that if the Court were to enter Besco's Post-Trial Stipulation with

---

[27] R. Doc. 155. In light of the agreement, Cajun withdrew its motion for preliminary injunction (R. Doc. 143, originally filed in Case No. 18-5630 as R. Doc. 9).
[28] R. Doc. 278.
[29] R. Doc. 283.
[30] R. Doc. 283-2 at 2.
[31] *Id.* at 2-4.
[32] *Id.* at 3.

the force of a judgment, the declaratory judgment of infringement would effectively be granted.[33] Next, Plaintiffs contend that because the jury found that Cajun "is the owner of all right, title and interest to all improvements and modifications made to the ERIS to the exclusion of all others," and the jury found that the Rental Agreement, which contains similar language, is a valid and enforceable agreement, the Court should require that Besco turn over its inventory of Accused Products to Plaintiffs.[34] Plaintiffs also argue that because the jury found that Besco misappropriated Plaintiffs' trade secrets under both the DTSA and LUTSA, the Court should enjoin Besco from further use of information gained by Besco through its disassembly and analysis of the ERIS, which Plaintiffs say is the misappropriated trade secret not disclosed in the '862 Patent.[35] Plaintiffs also seek injunctive relief against Besco based on Besco's infringement of the '862 Patent and other claims.[36]

In opposition, Besco first argues that neither literal patent infringement nor infringement under the doctrine of equivalents was proven at trial.[37] It then states that its Post-Trial Stipulation effectively moots the pending motion, and that it would be willing to voluntarily agree to a narrowly-tailored consent judgment that conforms to the scope of the stipulation.[38] Next, Besco argues that there is no legal basis for the Court to permit a seizure of the Accused Products, and that such a remedy would go beyond the scope of any reasonably-tailored injunctive relief. Besco asserts that it showed at trial that it has modified its tools so that they do not infringe the '862 Patent, and that therefore, it does not possess any infringing tools to be seized.[39]

---

[33] *Id.* at 4.
[34] *Id.* at 5-6; R. Doc. 267 at 3.
[35] R. Doc. 283-2 at 6.
[36] *Id.* at 6-7.
[37] R. Doc. 286 at 1-4.
[38] *Id.* at 4-5.
[39] *Id.* at 5. Besco also re-argues the points it made in its motion to compel arbitration (R. Doc. 279), which the Court denied (R. Doc. 297), and thus, this argument is moot. *See* R. Doc. 286 at 6.

In reply, Plaintiffs argue that, with respect to their claim for declaratory judgment of infringement against the Accused First Design Products, they have shown that they have a reasonable apprehension that these products will literally infringe the '862 Patent because they established by a preponderance of the evidence that the Accused First Design Products practice every limitation of the asserted claim, that Besco still has nine such products in its possession, and that, as the jury found, Besco has a propensity for acting in bad faith and without regard for the rights and property of others.[40] Plaintiffs maintain that the jury rejected Besco's argument that the Accused Second Design Products do not infringe the '862 Patent because the filler pads are not the equivalents of the lower rollers, and also rejected Besco's contention that the filler pads were only used for two days and are no longer used.[41] In addition to restating that they seek injunctive relief preventing Besco's future infringement of the '862 Patent, preventing future use of the misappropriated trade secrets, and requiring seizure of Besco's versions of the ERIS, Plaintiffs clarify that they seek an injunction preventing Besco's future use of the benefits derived from its unfair competition and fraud.[42]

### III.  LAW & ANALYSIS

#### A. Permanent Injunction Standard

A plaintiff seeking a permanent injunction must demonstrate: (1) that it has suffered irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). This four-factor test

---

[40] R. Doc. 296 at 1-2.
[41] *Id.* at 2-3.
[42] *Id.* at 3.

applies to patent cases, meaning that a finding of infringement does not necessarily entitle the patent-holder to a permanent injunction against an infringer. *Id.* at 391-94. Courts must use discretion in determining whether to grant a permanent injunction without the application of broad classifications, categorical rules, or a presumption of irreparable harm. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148-49 (Fed. Cir. 2011) (citing *eBay*, 547 U.S. at 393). In exercising this discretion, courts must keep in mind that an injunction is an "extraordinary remedy" which should only issue when "essential in order effectually to protect property rights against injuries otherwise irremediable." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)).

### B. Accused First Design Products

Plaintiffs maintain that there is no dispute that the Accused First Design Products practice every single limitation of the asserted claims.[43] Plaintiffs argue that a declaratory judgment of infringement is warranted as Plaintiffs have a reasonable apprehension of future infringement because Besco used these products to generate profits until the issuance of the '862 Patent; upon issuance of the patent, Besco merely converted one of its ten Accused First Design Products into an Accused Second Design Product by replacing the lower rollers with filler pads; and in the Original Stipulation, Besco only agreed to cease using the Accused First Design Products during the litigation; all compounded with the jury's findings of Besco's malicious, willful, fraudulent, and bad faith conduct.[44] Besco, meanwhile, argues that it has not literally infringed the '862 Patent because the Accused First Design Products were never made, used, sold, or offered for sale by Besco after the issuance of the patent.[45]

---

[43] R. Doc. 283-2 at 3.
[44] *Id.* at 3-4.
[45] R. Doc. 286 at 2.

10

Plaintiffs state that a judgment enforcing Besco's Post-Trial Stipulation would remove their reasonable apprehension of future infringement.[46] Besco maintains that it would be willing to agree to a consent judgment conforming to the scope of its Post-Trial Stipulation.[47] Therefore, because enforcement of Besco's Post-Trial Stipulation will effectively grant the declaratory judgment of infringement, and Besco agrees to its enforcement, the Court will enforce Besco's Post-Trial Stipulation as a consent judgment, insofar as it relates to the Accused First Design Products. Furthermore, because Plaintiffs state that enforcement of Besco's Post-Trial Stipulation "provides a scope of injunctive relief that would be available to [them] for patent infringement,"[48] the Court finds it unnecessary to consider whether injunctive relief relating to the Accused First Design Products is warranted.

C. **Accused Second Design Products**

Plaintiffs seek an injunction preventing Besco's future infringement of the '862 Patent by making, using, selling, or offering to sell the Accused Second Design Products. They assert that the jury's finding that Besco infringed the '862 Patent shows that the Accused Second Design Products infringe the '862 Patent under the doctrine of equivalents and that the jury rejected Besco's contention that the infringing tools were only used for two days.[49] Besco maintains that Plaintiffs did not demonstrate that it infringed the '862 Patent under the doctrine of equivalents.[50]

The jury clearly found that Besco infringed the '862 Patent.[51] The Court will not re-weigh the evidence, as Besco essentially proposes. There is no doubt that the jury, having been instructed at length on the law concerning the doctrine of equivalents,[52] considered whether the Accused

---

[46] R. Doc. 283-2 at 4.
[47] R. Doc. 286 at 5.
[48] R. Doc. 283-2 at 4.
[49] R. Doc. 296 at 2-3.
[50] R. Doc. 286 at 2-4.
[51] R. Doc. 267 at 3.
[52] R. Doc. 266 at 20-25.

Second Design Products infringed the '862 Patent under the doctrine of equivalents when it made its finding. Having found that the Accused Second Design Products infringed the '862 Patent, Plaintiffs may be entitled to prevent future infringement through a permanent injunction.

Plaintiffs argue that since they have now achieved actual success on their patent claims, and the elements for injunctive relief are met, they are entitled to an injunction to prevent future infringement by Besco.[53] Besco does not make any argument that these elements have not been satisfied. In other words, Besco argues only that Plaintiffs have not achieved success on the merits, but does not contest that, if infringement is found, Plaintiffs have suffered irreparable harm, for which no adequate remedy at law exists, the balance of hardships favors Plaintiffs, and a permanent injunction would serve the public interest.

"The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (citing 35 U.S.C. § 154(a)(1)). Because injunctions are not issued automatically, however, all four elements required for permanent injunctive relief must be satisfied to enforce this right through an injunction.

1. **Irreparable Harm and Inadequate Legal Remedy**

"[T]o satisfy the irreparable harm factor in a patent infringement suit, a patentee must establish both of the following requirements: 1) that absent an injunction, it will suffer irreparable harm, and 2) that a sufficiently strong causal nexus relates the alleged harm to the alleged

---

[53] R. Doc. 283-2 at 6-7. Plaintiffs explain that they previously argued that the four elements necessary for a preliminary injunction were met when they sought a preliminary injunction based on their infringement claims against the Accused First Design Products. *See* R. Doc. 143. Plaintiffs maintain that the standards for a preliminary and permanent injunction are "essentially the same" except that, for the latter, they must show actual success rather than a likelihood of success on the merits. R. Doc. 283-2 at 6 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008)). Plaintiffs explain that they withdrew their motion for a preliminary injunction because there were questions whether there was a substantial likelihood of success with respect to the doctrine of equivalents claim when Besco revealed its Accused Second Design Products. Now that Plaintiffs have achieved actual success on the merits, they argue that they are entitled to injunctive relief.

infringement." *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1359-60 (Fed. Cir. 2013) (citation omitted). This is because "it is necessary to show that the infringement caused harm in the first place." *Id.* at 1360 (quotation and citation omitted).

Patent "infringement may cause a patentee irreparable harm not remediable by a reasonable royalty." *Acumed*, 551 F.3d at 1328. Irreparable harm is harm that no monetary damages, no matter how great, could address. *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2002) (citations omitted). "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Id.* (citations omitted).

Plaintiffs argue that due to Besco's infringement, Cajun is now forced to compete in a two, rather than one, source market against its former customer and a direct copy of its patented technology, resulting in the loss of the primary value of its patent – the right to exclude and control the terms of use – as well as lost business opportunities, lost sales, and damage to Cajun's goodwill and reputation.[54] Plaintiffs assert that but for Besco's infringement, Besco or its customers would have to rent or license the ERIS from Cajun, causing a loss of market share to Cajun. Plaintiffs emphasize Cajun's small size and recent market entry and, therefore, its need to leverage its patent in order to compete. They add that the infringement deprives Cajun of its reputation as the sole source and inventor of the ERIS, which would generate interest in its other inventions. Plaintiffs argue that Besco's infringement damages industry goodwill toward the ERIS specifically because, after copying the ERIS, Besco stated that the ERIS is merely a component of their own patented BATT System, despite the fact that, according to Plaintiffs, the ERIS is "elevator-agnostic."[55]

Besco does not refute these arguments. The Court finds that Plaintiffs have sufficiently shown irreparable harm and that this harm is causally related to Besco's infringement. Because

---
[54] R. Doc. 143-1 at 20.
[55] *Id.* at 22.

13

the alleged harm (*viz.*, market-share loss, loss of business opportunities, damage to reputation and goodwill) is difficult to quantify, no adequate remedy at law exists to address this harm. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010) ("Difficulty in estimating monetary damages is evidence that remedies at law are inadequate.") (citation omitted).

### 2. Balance of Hardships

This factor "assesses the relative effect of granting or denying an injunction on the parties," and therefore relevant factors include the parties' sizes, products, and revenue sources. *Id.* Plaintiffs argue that the balance of hardships weighs in their favor because while Besco sells other products and services, so that an injunction will not risk putting Besco out of business, the hardship on Cajun, if forced to compete against its own patented invention, is substantial.[56] Plaintiffs maintain that Cajun is suffering economic and non-economic damage to its business, which relies in substantial part on the exploitation of its patent rights.[57] Especially in light of Besco's Post-Trial Stipulation, which tells the Court that Besco will not be unduly harmed if it cannot utilize the Accused Second Design Products, the Court finds that the balance of hardships weighs in Plaintiffs' favor.

### 3. Public Interest

"[T]he touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *Id.* at 863 (citation omitted). Plaintiffs argue that the public interest will be served by granting an injunction, since the public has an interest in enforcing patents, and furthermore, Cajun can provide an adequate supply of the ERIS, so that the public can

---

[56] *Id.* at 24.
[57] *Id.*

14

continue to access the patented technology to the extent there is demand.[58] Besco does not dispute this. The Court finds that the public interest will be served by preventing Besco from further infringement of the '862 Patent.

In sum, then, the Court holds that a permanent injunction against Besco, preventing its manufacture, use, sale, or offer for sale of the Accused Second Design Products, is warranted.

### D. Misappropriated Trade Secrets

Plaintiffs assert that because the jury found that Besco misappropriated Plaintiffs' trade secrets under both the DTSA and the LUTSA, and both statutes provide that the Court may enter an injunction enjoining further misappropriation, the Court should enjoin Besco from further use of information gained by Besco through it disassembly and analysis of the ERIS, which they explain is the misappropriated trade secret. Plaintiffs note that they do not claim that any information contained in the '862 Patent is still a trade secret.

Under the DTSA, the Court may grant an injunction to prevent any actual or threatened trade secret misappropriation, so long as it does not prevent a person from entering into an employment relationship or otherwise conflict with applicable state law prohibiting restraints on the practice of a lawful profession, trade, or business. 18 U.S.C. § 1836(b)(3)(A). Likewise, under the LUTSA, the Court may enjoin actual or threatened misappropriation, for as long as the trade secret exists or for an additional reasonable period of time to eliminate the commercial advantage that otherwise would be derived from the misappropriation. La. R.S. 51:1432.

Based on the jury's finding that Besco willfully and maliciously misappropriated Plaintiffs' trade secret, the Court holds that an injunction preventing any further use of the misappropriated trade secret is warranted.

---

[58] R. Doc. 143-1 at 25.

E. **Seizure of Accused Products**

Plaintiffs argue that because the jury found that Cajun "is the owner of all right, title and interest to all improvements and modifications made to the ERIS to the exclusion of all others" and found that the Rental Agreement is enforceable, they are entitled to seize Besco's inventory of "knock-off ERIS tools" because they are Plaintiffs' property.[59] The jury's finding tracks the language of ¶ 3.9 of the Rental Agreement, which provides in pertinent part:

> … [Cajun] shall retain all right, title and interest to all improvements and modifications made to the Equipment, whether made by [Cajun] or [Besco]. To ensure that ownership of the Equipment remains with [Cajun], [Besco] hereby assigns all right, title and interest in all information conceived of and/or reduced to practice that in any way relates to the Equipment.[60]

Plaintiffs maintain that this language entitles them to ownership of the ERIS tools, regardless of the various modifications which Besco has made. According to Plaintiffs, their claims for bad faith breach of contract and declaratory judgment of ownership provide this relief. Besco argues that Plaintiffs have not cited any authority supporting the demanded seizure of its property, and that furthermore, because it has modified its equipment to remove lower rollers and filler pads, it does not have any infringing tools to be seized.[61]

That Besco has further modified its tools so that they allegedly do not infringe on the '862 Patent is irrelevant as Plaintiffs base their request for seizure of the tools on the Rental Agreement and claim for declaratory judgment of ownership, not on patent infringement. Based on the jury's finding that Cajun is the owner of all right, title, and interest to all improvements and modifications made to the ERIS to the exclusion of all others, Cajun is entitled to a declaratory judgment to this effect. Besco is right to point out, however, that Plaintiffs cite no authority for the extraordinary

---

[59] R. Doc. 283-2 at 5-6
[60] *Id.* at 5 (emphasis omitted).
[61] R. Doc. 286 at 5.

remedy of seizure which they seek.

The express language of the Rental Agreement provides that Cajun owns the *improvements* and *modifications* to the ERIS, and the *information* conceived of and/or reduced to practice that in any way relates to the ERIS. Therefore, this provision provides Cajun with *intellectual property rights* but does not provide that these rights confer on Cajun ownership of the physical materials constituting the ten tools in Besco's possession. In other words, Cajun owns any conceptual modifications made by Besco to the ERIS, such as the use of filler pads as a replacement for the lower rollers in the ERIS, but not the physical tools or the filler pads purchased and used by Besco.

The Court could not find any caselaw in which a declaratory judgment of ownership of intellectual property rights was used as a basis for the seizure of physical materials containing or in some way applying those intellectual property rights outside the context of computers and related hardware and software. Still, Besco is prohibited from using the tools themselves to the extent they infringe the '862 Patent. Further, the Court expects that Besco will fully re-purpose its tools and materials so that they do not in any way infringe upon Cajun's ownership by contract of all improvements, modifications, and information relating to the ERIS, regardless of whether the tools infringe the '862 Patent.

### F. Unfair Competition and Fraud

Plaintiffs maintain that they are entitled to an injunction that prevents Besco's future use of the benefits derived from its unfair competition and fraud.[62] Injunctive relief is unavailable, however, where an adequate remedy at law exists. *Weinberger*, 456 U.S. at 312. The jury awarded Plaintiffs monetary damages as a result of Besco's fraud and violation of LUTPA. Plaintiffs have not explained whether or how these monetary damages do not provide them with an adequate

---

[62] R. Doc. 296 at 3.

remedy. Furthermore, LUTPA provides injunctive relief only in actions brought by the attorney general, not those brought by private parties. *See* La. R.S. 51:1407; *see also Fam. Res. Grp., Inc. v. La. Parent Magazine*, 818 So. 2d 2, 32-34 (La. App. 2001) (holding that LUTPA authorizes injunctive relief only in actions brought by the attorney general). Therefore, Plaintiffs are not entitled to injunctive relief for their fraud or LUTPA claims.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion for declaratory judgment and injunctive relief (R. Doc. 283) is GRANTED IN PART and DENIED IN PART.

Within fourteen days from the entry of this Order & Reasons, the parties are to submit a proposed final judgment incorporating all proper relief, including relief conforming to this Order & Reasons and the other Orders & Reasons issued contemporaneously.

New Orleans, Louisiana, this 23rd day of January, 2020.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE