| | |
|---|---|
| CAJUN SERVICES UNLIMITED, LLC, ET AL. | CIVIL ACTION |
| | NO. 17-491 |
| VERSUS | c/w 18-5630 and 18-5932 |
| BENTON ENERGY SERVICE COMPANY dba BESCO TUBULAR, ET AL. | SECTION M (2) *Pertains to all cases* |

## ORDER & REASONS

Before the Court is a motion for attorney's fees, litigation expenses, costs, and prejudgment interest filed by plaintiffs Cajun Services Unlimited, LLC d/b/a Spoked Manufacturing ("Cajun"), T2 Tools & Design, LLC, Shane Triche, and Heath Triche (collectively, "Plaintiffs").[1] Defendant Benton Energy Service Company d/b/a Besco Tubular ("Besco") opposes the motion.[2] Plaintiffs replied in support of the motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

## I. BACKGROUND

This action is one among three consolidated lawsuits over rights to an elevator roller insert system ("ERIS"), a technology used in drilling for oil.[4] Plaintiffs and Besco dispute the contractual arrangement between Cajun and Besco while the ERIS was being developed and while Besco was renting the ERIS from Cajun, the validity of the patent obtained by Cajun for the ERIS (U.S. Patent No. 9,988,862, "the '862 Patent"), the propriety of Besco's having had the ERIS reverse-

---

[1] R. Doc. 281.
[2] R. Doc. 285.
[3] R. Doc. 294.
[4] For a more complete discussion of the ERIS technology, *see* R. Docs. 210 at 1-3 & 241 at 3-5 and the documents cited therein.

engineered and copied, Besco's use of what it alleges are its own versions of the ERIS, and ownership rights related to the ERIS.[5]  In this consolidated action, Cajun seeks injunctive relief to stop Besco from using its alternative designs of the ERIS; a declaratory judgment that it owns the ERIS and that Besco assign to it all right, title, and interest to all improvements and modifications made to the ERIS, as well as any information conceived of and/or reduced to practice that in any way relates to the ERIS; a declaratory judgment that Besco infringed the '862 Patent; and damages for (1) willful infringement of the '862 Patent; (2) violation of the DTSA; (3) violation of the LUTSA; (4) violation of the LUTPA; (5) bad faith breach of contract; and (6) fraud.  The other Plaintiffs join Cajun's claims under the DTSA and LUTSA.[6]

A four-day jury trial was held,[7] which resulted in a jury verdict in favor of Plaintiffs and against Besco on all claims.[8]  The jury determined that there was a written agreement between Cajun and Besco for rental of the ERIS tool (the "Rental Agreement"), and that Besco breached the agreement and did so in bad faith, awarding $866,103.10 in damages for breach of contract and another $552,000.00 for Besco's bad faith breach.  The jury also found that Cajun was the owner of all right, title, and interest to all improvements and modifications made to the ERIS to the exclusion of all others.  In addition, the jury found that Besco's conduct amounted to fraud, violated the LUTPA, violated the DTSA and LUTSA willfully and maliciously, and infringed the '862 Patent.  As a result, the jury awarded $1.5 million in damages for these violations and infringement and another $2 million in exemplary damages for willful and malicious violation of the DTSA.

---

[5] For a more complete discussion of the business relationship between Cajun and Besco, *see* R. Doc. 241 at 5-11 and the documents cited therein.
[6] R. Doc. 175.
[7] R. Doc. 257.
[8] R. Doc. 267.

Following trial, the Court established a briefing schedule for all post-verdict/prejudgment motions the parties indicated they would file.[9]  Ahead of the established schedule, on July 30, 2019, Plaintiffs filed a motion for injunctive relief and for writ of attachment, and then they filed this motion and a motion for declaratory judgment and injunctive relief on August 14, 2019.[10]  In addition, Besco filed a motion to compel arbitration,[11] which the Court denied on November 19, 2019.[12]

## II.   PENDING MOTION

Plaintiffs argue that, as the prevailing parties, they are entitled to attorney's fees under the Rental Agreement and the jury's findings of fraud (La. Civ. Code art. 1958), LUTPA violations (La. R.S. 51:1409), and willful and malicious trade-secrets violations (La. R.S. 51:1434; 18 U.S.C. § 1836).[13]  Plaintiffs seek a fee enhancement under *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[14]  Plaintiffs maintain that they are also entitled to all costs and expenses under Federal Rule of Civil Procedure 54(d)(1), 28 U.S.C. § 1920, and the Rental

---

[9] R. Doc. 272.

[10] R. Docs. 273, 281 & 283.

[11] R. Doc. 279.

[12] R. Doc. 297.  On December 19, 2019, Besco filed a notice of its appeal of this decision to the Federal Circuit.  R. Doc. 299.  Whether a district court retains jurisdiction over a case upon an interlocutory appeal of an order denying a motion to compel arbitration is the subject of a circuit split.  *See Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 907 (5th Cir. 2011) (collecting cases).  The Federal Circuit has yet to weigh in, although in addressing a completely different issue (*viz.*, the appropriateness of summary disposition of an appeal), it has cited with what might be read as approval the Seventh Circuit's holding that such an appeal divests the district court of jurisdiction.  *See Ecolab, Inc. v. Gardner Mfg. Co.*, 56 F. App'x 484, 485 (Fed. Cir. 2003) (citing *Bradford-Scott Data Corp. v. Physician Comput. Network*, 128 F.3d 504, 506 (7th Cir. 1997)).  Because the Federal Circuit's observation is *dictum* and was made without the benefit of the Fifth Circuit's analysis of the issue in *Weingarten*, and because this Court lies within the Fifth Circuit, the Court will follow the Fifth Circuit's holding that an appeal from an interlocutory order denying a motion to compel arbitration does not divest it of jurisdiction to address the matters that remain before the Court, including the pending post-verdict/prejudgment motions, entry of judgment, and post-judgment motions.  *See Weingarten*, 661 F.3d at 907-10.

[13] R. Doc. 281-2 at 1.

[14] *Id.* at 14-20.  Plaintiffs also seem to bottom their request for a fee enhancement on 35 U.S.C. § 285 because, they argue, this is an "exceptional case by nature of Besco's litigation tactics, including intentional withholding of information and the filing of a baseless lawsuit and baseless invalidity counterclaims beyond inventorship."  *Id.* at 1-2, 20-24.

Agreement.[15]  Finally, Plaintiffs submit they are entitled to additional accrued interest for unpaid invoices (the breach-of-contract claim) and prejudgment interest in connection with the jury's award of bad faith consequential damages and damages for fraud, and trade-secrets and LUTPA violations.[16]

In opposition, Besco argues that in calculating attorney's fees under the lodestar method, the Court should reduce the hourly billing rates for counsel submitted by Plaintiffs and set them in accordance with local rates.[17]  Besco also asks the Court to reduce the amount of the overall billed hours for unproductive, excessive, and/or redundant entries, and to ensure that any time spent by the Plaintiffs pursuing claims against dismissed defendant Elite Energy Services, LLC ("Elite") is excluded from the fee award.[18]  Besco argues that the Court should deny Plaintiffs' request for an enhanced fee, as such an enhancement is "designed as a punitive or vindictive sanction for egregious infringement behavior," which Besco maintains is not warranted here.[19]  Finally, Besco asserts that many of the expenses for which Plaintiffs request reimbursement are not recoverable because they are either vague, not clearly documented, or improper.[20]

In reply, Plaintiffs reiterate that the billing rates they submitted are reasonable, especially given the complexities of this case.[21]  Plaintiffs argue that a fee enhancement is justified, not only given the result but also because of "the likelihood that Besco will drag this case along" further.[22]  Plaintiffs also emphasize that Besco must reimburse Cajun for all of its costs, as required by the

---

[15] *Id.* at 1-2.

[16] *Id.* at 25.

[17] R. Doc. 285 at 4-5.

[18] *Id.* at 5-7.  Cajun's original and first amended complaint named Elite as a defendant.  *See* R. Docs. 1 & 19. On October 17, 2017, Cajun and Elite stipulated to the dismissal of all claims asserted against each other in this action, without prejudice, with each party to bear its own attorney's fees and costs.  *See* R. Doc. 47.

[19] R. Doc. 285 at 7-8.

[20] *Id.* at 8-9.  Besco also re-argues the points it made in its motion to compel arbitration (R. Doc. 279), which the Court denied (R. Doc. 297), and thus, this argument is moot.  *See id.* at 2.

[21] R. Doc. 294 at 2-7.

[22] *Id.* at 7.

Rental Agreement, beyond those costs specifically enumerated in 28 U.S.C. § 1920, and that they pursued the case in a cost-conscious and efficient manner.[23] Plaintiffs conclude by noting that Besco did not oppose their interest calculations.[24]

## III. LAW & ANALYSIS

### A. Standard for Attorney's Fees and Costs

Under the American Rule, a prevailing litigant may not ordinarily recover either attorney's fees or non-taxable litigation expenses or costs from a loser absent a contractual or statutory fee-shifting provision. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 257, 260 (1975) (attorney's fees); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (expenses and costs). Plaintiffs maintain that an award of attorney's fees is warranted under the Rental Agreement and under the jury's findings of fraud (La. Civ. Code art. 1958), LUTPA violations (La. R.S. 51:1409), and willful and malicious trade-secrets violations (La. R.S. 51:1434; 18 U.S.C. § 1836).[25] Besco does not contest either these bases, that Plaintiffs are the prevailing parties, or that an award of attorney's fees is warranted.[26] Because Plaintiffs are the prevailing parties, the Court finds that an award of attorney's fees to Plaintiffs is warranted under certain of these statutory bases.[27] *See* La. R.S. 51:1409(A) (attorney's fees and costs shall be awarded when

---

[23] *Id.* at 8-9.

[24] *Id.* at 9.

[25] R. Doc. 281-2 at 1. Plaintiffs also seek fees under 35 U.S.C. § 285, discussed *infra* section III.C.

[26] Besco does argue that an award should be denied because, according to Besco, this dispute arises out of a contract with a mandatory arbitration clause, but as previously explained, this argument is moot. *See supra* note 20.

[27] Attorney's fees are not recoverable under article 1958 of the Louisiana Civil Code for all cases of fraud, but only for those where the type of fraud is a vice of contractual consent for which the remedy is recission, not enforcement of the contract. *See Johnson v. Henry*, 206 So. 3d 916, 920 (La. App. 2016); *Foley & Lardner, L.L.P. v. Aldar Invs., Inc.*, 491 F. Supp. 2d 595, 608 (M.D. La. 2007). In addition, while the Rental Agreement was found binding and enforceable, as discussed further *infra* section III.E, its plain language states that "[Besco] will pay all of [Cajun's] costs, including attorney's fees and expenses, incurred in connection with the *collection of past due amounts* from [Besco]." R. Doc. 281-3 (section 3.2) (emphasis added). Accordingly, the Rental Agreement only supports an award of attorney's fees insofar as these fees were incurred for Cajun's breach-of-contract claim for past due amounts. Because Plaintiffs make no effort to segregate such fees from those incurred in pursuing their other claims, the Court will only examine attorney's fees as recoverable under the fee-shifting statutes identified above.

damages are awarded under this section); 18 U.S.C. § 1836(b)(3)(D) (attorney's fees may be awarded to prevailing party when trade secret was willfully and maliciously misappropriated); La. R.S. 51:1434 (attorney's fees may be awarded to prevailing party when trade secret was willfully and maliciously misappropriated).

Plaintiffs now seek to have the Court fix the amount of attorney's fees they are entitled to recover. In the Fifth Circuit, courts apply a two-step method for determining a reasonable attorney's fee award, beginning with calculating the "lodestar." *Combs v. City of Huntington*, 829 F.3d 388, 391-92 (5th Cir. 2016) (citation omitted). A court must determine the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). As the party requesting fees, Plaintiffs bear the burden of establishing the reasonableness of the fees and costs they request by submitting adequate documentation – namely, time records, affidavits, and the like. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"); *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, 838 F. Supp. 2d 516, 518 (E.D. La. 2012). "After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended 'by affidavit or brief with sufficient specificity to give fee applicants notice' of the objections." *Who Dat Yat Chat*, 838 F. Supp. 2d at 519 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

Although there is a strong presumption that the lodestar is reasonable, a court next considers the various factors identified in *Johnson*, 488 F.2d at 717-19,[28] and may adjust the

---

[28] The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience,

lodestar upward or downward depending on the weight it allots to those factors. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010), and *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)). As the fee applicants, Plaintiffs "bear[] the burden of showing that 'such an adjustment is *necessary* to the determination of a reasonable fee.'" *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 771 (5th Cir. 1996) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)) (emphasis in original). The lodestar, however, "may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Black*, 732 F.3d at 502 (citing *Saizan*, 448 F.3d at 799).

### B. Lodestar Analysis

Plaintiffs request $1,060,584.50 as the appropriate lodestar fee.[29] During the course of this litigation, Plaintiffs were represented by the Scott Law Group, LLP ("SLG") and Keogh, Cox & Wilson, Ltd. ("Keogh Cox").[30] In total, SLG and Keogh Cox attorneys, paralegals, and a case clerk and trial presentation assistant logged 3,071.30 hours working on this matter.[31] According to Plaintiffs, the total value of these services is $1,060,584.50, which includes $975.00 in paralegal fees and $9,454.50 in case clerk and trial presentation assistant fees.[32] In other words, Plaintiffs' lodestar fee request is not reduced by a single penny from the total value of the time written up, although such reductions are to be expected in the exercise of billing judgment. Plaintiffs and their counsel executed a contingency fee agreement which provides for a blended percentage rate based on various elements of recovery. According to Plaintiffs, the agreement results in a fee of

---

reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases. *Id.* at 717-19.

[29] R. Doc. 281-2 at 9.
[30] *Id.* at 9-10. *See also* R. Docs. 281-4, 281-5, & 281-6.
[31] R. Doc. 281-2 at 10.
[32] *Id.*

$1,775.241.24 based on 20% for the first $1,000,000 in recovery and 40% for any recovery in excess of that amount.[33]

The lodestar analysis in this case requires a determination of the hours reasonably expended as well as an appropriate hourly rate in the local market. *See McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381-83 (5th Cir. 2011) (applying rates applicable where district court sits rather than rates applicable to attorney's place of work absent certain limited circumstances, such as a showing that out-of-district counsel was necessary to the litigation). According to the affidavits and billing records submitted, Plaintiffs seek to recover for services performed by seven attorneys, two paralegals, and one case clerk and trial presentation assistant: SLG senior partner, Walter J. Scott, Jr., for whom Plaintiffs seek a rate of $450.00 per hour for 601.30 hours of work;[34] SLG partner, George T. Scott, for whom Plaintiffs seek a rate of $350.00 per hour for 1,616.70 hours of work;[35] Keogh Cox partner, Tori S. Bowling, for whom Plaintiffs seek a rate of $350.00 per hour for 399.10 hours of work;[36] SLG associate, Nicholas J. Scott, for whom Plaintiffs seek a rate of $275.00 per hour for 117.90 hours of work;[37] Keogh Cox associates, Sydnee Menou, Chelsea Payne, and John Grinton, for whom Plaintiffs seek a rate of $275.00 per hour for 151.40 hours of work;[38] Keogh Cox paralegals, Suzi Chance and Phuong Jenkins, for whom Plaintiffs seek a rate of $75.00 per hour for 13.00 hours of work;[39] and the SLG case clerk and trial preparation assistant, Connor Scott, for whom Plaintiffs seek a rate of $55.00 per hour for 171.90 hours of work.[40] Besco challenges the rates for all attorneys, urging that the rates be set as follows: $250 per hour for

---

[33] *Id.* at 8.
[34] R. Docs. 281-2 at 9; 281-6; 281-15.
[35] R. Docs. 281-2 at 9; 281-5; 281-15.
[36] R. Docs. 281-2 at 9; 281-4; 281-14.
[37] R. Docs. 281-2 at 10; 281-15.
[38] R. Docs. 281-2 at 10; 281-14.
[39] *Id.*
[40] R. Doc. 281-2 at 10.

Walter Scott; $225 per hour for George Scott and Tori Bowling; and $200 per hour for Nicholas Scott and the Keogh Cox associates.[41]

"An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested." *Martinez v. Refinery Terminal Fire Co.*, 2016 WL 4594945, at *7 (S.D. Tex. Sept. 2, 2016) (citing *Kellstrom*, 50 F.3d at 328). Plaintiffs assert that the "rates proposed by counsel are at or below counsels' customary rate."[42] Here, however, Besco contests the requested hourly rates.

Plaintiffs submit declarations attesting to the qualifications and experience of their timewriters. Walter Scott has over 32 years of commercial litigation experience in a wide variety of cases, including, of most relevance, intellectual property, energy, and business disputes.[43] George Scott is a registered patent lawyer and has over 11 years of litigation experience with a focus on patent litigation and related disputes.[44] Tori Bowling has over 15 years of commercial litigation experience in a wide variety of subject areas.[45] At the time they rendered services, Nicholas Scott, Sydnee Menou, Chelsea Payne, and John Grinton were associates with between four and seven years of litigation experience.

While an attorney's affidavit alone cannot support a rate's reasonableness, *see Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) ("the burden is on the fee applicant to produce satisfactory

---

[41] R. Doc. 285 at 4-5. Besco does not specifically challenge the rates submitted for the paralegals or trial assistant/case clerk, but also does not include them in its calculation of the total amount of attorney's fees to be awarded. *See id.* at 5.

[42] R. Doc. 281-2 at 13. In their submitted declarations, Tori Bowling, George Scott, and Walter Scott all declare that their "recitation of the customary hourly rates in the industry" is fair and reasonable. *See* R. Docs. 281-4; 281-5; 281-6.

[43] R. Doc. 281-6.

[44] R. Doc. 281-5.

[45] R. Doc. 281-4. The Keogh Cox time records reflect a limited number of hours for Virginia McLin, who like Ms. Bowling, is a litigation partner at the firm.

evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"), courts in the Fifth Circuit also employ their "'own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value.'" *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 702 n.1 (E.D. La. 2009) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)). Neither side here provides support for the rates urged other than case law.[46]

The Court finds that Plaintiffs' proposed hourly rates for their lawyers, paralegals, and trial assistant/case clerk fall within the range of rates allowed by other courts in this district, albeit on the higher end of that range. *See, e.g., EnVen Energy Ventures, LLC v. Black Elk Energy Offshore Operations, LLC*, 2015 WL 3505099, at *2-3 (E.D. La. June 3, 2015) (finding hourly rates of $325 for partner/shareholder with 20 years of experience, $300 for associate with 10 years of experience, and $275 for associate with seven years of experience to be reasonable); *Wagner v. Boh Bros. Constr. Co.*, 2012 WL 3637392, at *15 (E.D. La. Aug. 22, 2012) (finding hourly rates of $275 for partner/shareholder with 10 years of experience, and $235 for associate with four years of experience to be reasonable); *Foley v. SAFG Ret. Servs., Inc.*, 2012 WL 956499, at *2 (E.D. La. Mar. 20, 2012) (finding hourly rates of $350 for partner/member with over 30 years of experience, and $275 for associate with over eight years of experience to be reasonable); *Johnson*, 639 F. Supp. 2d at 701-02 (E.D. La. 2009) (finding hourly rates of $300 for partners, $225 for associates, and $75 for paralegals to be within the customary range of rates in the New Orleans area); *Oreck*

---

[46] In arguing that Besco's proposed rates are too low, Plaintiffs emphasize that Besco does not submit the rates and hours of its own counsel, though they may be relevant to the inquiry. R. Doc. 294 at 6-7 (citing *Howe v. Hoffman-Curtis Partners, Ltd.*, 2007 WL 7086572, at *1 (S.D. Tex. Apr. 13, 2007) (holding that defendant's attorney's fees are relevant and discoverable when defendant argues that plaintiff's fees are unreasonable)). But Plaintiffs made no effort to obtain through discovery the rates and hours of Besco's counsel.

*Direct, LLC v. Dyson, Inc.*, 2009 WL 961276, at *6 (E.D. La. Apr. 7, 2009) ("The Court is familiar with the local legal market and notes that the top rate for partner-level attorneys here [*i.e.*, New Orleans] is between $400 and $450 per hour."); *Bd. of Supervisors of La. State Univ. v. Smack Apparel Co.*, 2009 WL 927996, at *4 & *7 (E.D. La. Apr. 2, 2009) (finding that $325 was a reasonable hourly rate for attorney with 10 years of experience in a specialty practice and for attorney with 29 years of unspecialized legal experience); *In re OCA, Inc., Sec. & Derivative Litig.*, 2009 WL 512081, at *25 (E.D. La. Mar. 2, 2009) (finding that, in the New Orleans legal market, partner-level attorneys performing securities work bill at rates between $400 and $450 per hour and associates bill at rates between $200 and $250 per hour, and that $100 per hour is a reasonable rate for paralegals, law clerks, investigators, and project assistants). As reflected by the time entries, each attorney contributed to the success of Plaintiffs' case at the different levels of their experience. The same goes for the paralegals and trial assistant/case clerk. As discussed in more detail below, the reasonableness of these rates is supported by the applicable *Johnson* factors, including the contingent nature of the fee arrangement between Plaintiffs and their counsel.[47] Hence, the Court finds that the requested hourly rates of the attorneys, paralegals, and trial assistant/case clerk are reasonable and recoverable.

Generally, the Court is satisfied that the time entries in the invoices reflect a sufficient level of detail and description about the number of hours charged and the nature of the services rendered as to support the conclusion that the bulk of the hours were reasonably expended and the services reasonably rendered. Moreover, Besco makes no specific challenge to the hours expended or the services rendered, as the billing records were submitted for *in camera* inspection, but only asks

---

[47] While the contingent nature of the arrangement cannot serve as a basis for fee enhancement, this limitation does not preclude the Court from using this *Johnson* factor to support the reasonableness of the requested lodestar rates. *See Walker*, 99 F.3d at 772 & n.13 (citing *City of Burlington*, 505 U.S. at 567, and *Shipes*, 987 F.2d at 323).

the Court to reduce the total billing time either by subtracting questionable time entries or by a percentage from the total due to entries which may be unproductive, excessive, and/or redundant.[48] Nevertheless, "[t]he [fee] applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437 (citation omitted). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799 (citations omitted). A court has discretion to reduce the number of hours awarded, or a percentage from the total, for vague and incomplete documentation insufficient to demonstrate billing judgment. *Id.*; *Kellstrom*, 50 F.3d at 324.

Plaintiffs state that "[e]ach attorney exercised billing judgment" but do not provide any support for this bald assertion.[49] On the contrary, they simply assert that "the results cannot be questioned,"[50] when in fact, they "are charged with proving that they exercised billing judgment." *Walker*, 99 F.3d at 770 (citation omitted). There is no evidence, for example, that Plaintiffs' counsel wrote off any excessive, redundant, or unproductive hours, or any record of billing judgment for that matter. *See id.* at 769-70 (plaintiffs failed to prove billing judgment where they provided no evidence of having written off hours); *see also Tech Pharm. Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 908 (E.D. Tex. 2017) (attorney failed to show billing judgment when her affidavit did not refer to "a single minute that was written off as unproductive, excessive, or redundant") (citations omitted). As to Besco's point regarding hours expended by Plaintiffs pursuing claims against Elite, while there is no indication the services were devoted exclusively to such work, Plaintiffs have not demonstrated they were not. The time records also reflect entries

---

[48] R. Doc. 285 at 5-7.
[49] R. Doc. 281-2 at 10.
[50] *Id.*

for travel, meetings attended by multiple attorneys, some duplication, and block billing. Billing judgment calls for some reduction of this time.

Given Plaintiffs' attorneys failure to demonstrate billing judgment, while keeping in mind the complexity of the case, the number of documents produced, the discovery undertaken, the filings made, and the length of the litigation, the Court finds it appropriate to reduce the hours Plaintiffs' attorneys logged by 10 percent. *See Saizan*, 448 F.3d at 800 (10% reduction for lack of billing judgment); *see also Walker*, 99 F.3d at 770 (15% reduction for lack of billing judgment); *Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987) (13% reduction for inadequate documentation); *Tech Pharm. Servs.*, 298 F. Supp. 3d at 906 (reducing the number of each firm's hours by 6% for lack of billing judgment); *Innovention Toys, LLC v. MGA Entm't, Inc.*, 2014 WL 1276436, at *4 (E.D. La. Mar. 27, 2014) (reducing the submitted hours by 10% for lack of evidence of billing judgment).

Accordingly, having reduced the submitted hours by 10 percent, the Court calculates the lodestar to be $954,526.05 (or $1,060,584.50 - $106,058.45 = $954,526.05).

## C. Patent Act

In a section of their brief entitled "Fee Enhancement," Plaintiffs stress that the complexity of the case, further complicated by Besco's litigation tactics, together present the exceptional circumstances contemplated by 35 U.S.C. § 285. At the end of this section of their brief, which is itself encompassed within the portion of their brief entitled "*Johnson* Factors," they request a fee enhancement of $750,000.00.[51] Besco counters that an award of enhanced damages under the Patent Act is unwarranted, as such damages are "not to be meted out in a typical infringement case, but are instead designed as a punitive or vindictive sanction for egregious infringement

---

[51] *Id.* at 24.

behavior."[52]

First, the Court does not understand Plaintiffs to be seriously pursuing enhancement under the Patent Act.  After all, Plaintiffs do not even mention the statutory predicate for such an award (35 U.S.C. § 284).  As Besco notes, awards of enhanced damages under § 284 are limited to "egregious cases of misconduct beyond typical infringement."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016).  Here, the jury made no finding of willful infringement.[53] Awarding enhanced damages requires an analysis of the nine factors laid out in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992), yet Plaintiffs do not address this test.[54]  *See, e.g., VirnetX Inc. v. Apple Inc.*, 2018 WL 10048706, at *19 (E.D. Tex. Aug. 30, 2018) (citing *Read*, 970 F.2d at 827).  Moreover, the jury already accounted for Besco's willful and malicious conduct in its award of $2 million in exemplary damages.[55]

It is plain, then, that Plaintiffs argue that this case is exceptional, pointing to the jury's findings of bad faith and Besco's litigation tactics, so that the Court may award attorney's fees under 35 U.S.C. § 285, not enhanced damages under § 284.[56]  *See Innovention Toys, LLC v. MGA Entm't, Inc.*, 2014 WL 1276413, at *1 (E.D. La. Feb. 24, 2014) ("Factors to be considered in determining exceptionality [under 35 U.S.C. § 285] include litigation misconduct; vexatious, unjustified, or otherwise bad faith litigation; and, whether the infringement was willful."), *adopted as modified*, 2014 WL 1276346 (E.D. La. Mar. 27, 2014).  Without a finding of willful infringement, the Court doubts this case is "exceptional," but regardless, finds it unnecessary to make such a determination, because an award of attorney's fees is already supported under the

---

[52] R. Doc. 285 at 7.
[53] *See* R. Doc. 267.
[54] While it is not essential that the *Read* decision be explicitly referenced, the analysis must be performed to determine whether enhanced damages are warranted.
[55] *See id.*
[56] *See* R. Docs. 281-2 at 20-23; 294 at 2 n.1.

jury's findings of LUTPA (La. R.S. 51:1409), and willful and malicious trade-secrets violations (La. R.S. 51:1434; 18 U.S.C. § 1836).

Accordingly, the Court will only examine whether an enhancement of the lodestar is warranted under the *Johnson* factors.[57]

### D. *Johnson* Factors

Plaintiffs submit that each of the applicable *Johnson* factors support the requested fee award and also support an upward adjustment of the lodestar fee calculation.[58]  *See Johnson*, 488 F.2d at 717-19.  Besco does not specifically dispute Plaintiffs' analysis of the *Johnson* factors, but opposes enhancement.[59]  The Court considers each factor in turn to determine whether any adjustment is warranted.  However, the Supreme Court and Fifth Circuit have stated that several of the *Johnson* factors – namely, the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained – are presumably fully reflected and subsumed in the lodestar amount and therefore may only serve as the basis for an upward adjustment in "rare" and "exceptional" cases.  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993).  The Supreme Court has further eroded use of the *Johnson* factors for purposes of enhancement, as opposed to a gauge of reasonableness, in that the contingent nature of the case cannot serve as the basis for a fee enhancement.  *Walker*, 99 F.3d at 772 & n.13 (citing *City of Burlington*, 505 U.S. at 567; *Shipes*, 987 F.2d at 323).  Moreover, superior results obtained "are

---

[57] Plaintiffs also argue that enhancement is justified given "the likelihood that Besco will drag this case along to the farthest margin possible."  R. Doc. 294 at 7.  They note that since the filing of this motion, they have incurred an additional $30,000-$40,000 in fees, and that the "fees continue to accrue – with no end in sight." *Id.*  The possibility of growing costs is not a valid basis for an enhancement, and the Court will not award fees for future work or for work that has not yet been documented.  To the extent Plaintiffs believe they are entitled to an additional award of fees for such work, they may submit an application for same at the appropriate time, *i.e.*, following resolution of any appeals.

[58] R. Doc. 281-2 at 14-24.

[59] *See* R. Doc. 285 at 7-8.

relevant only to the extent it can be shown that they are the result of superior attorney performance." *Perdue*, 559 U.S. at 554.

### 1. The Time and Labor Required

Plaintiffs state that no dispute exists that significant time and labor were expended in the successful prosecution of their claims.[60] The Court finds that this factor was accounted for in the lodestar calculation and therefore does not warrant an upward departure. *See Walker*, 99 F.3d at 771 ("The first factor already is included in the lodestar … .").

### 2. The Novelty and Difficulty of the Issues

Plaintiffs assert that this matter presented complex patent and intellectual property issues, along with highly fact-intensive and legally challenging claims for fraud, unfair competition, and trade-secrets violations.[61] The novelty and complexity of the issues were reflected in the hourly rates and number of billable hours, and thus do not warrant an upward adjustment. *See Blum*, 465 U.S. at 898-99 (explaining that the novelty and complexity of the issues are presumably fully reflected in the lodestar calculation, and therefore are inappropriate bases to increase the fee award); *see also Shipes*, 987 F.2d at 320.

### 3. The Skill Required to Perform the Legal Services Properly

Plaintiffs submit that this case required greater skills to litigate than would be expected of a typical case, including specialty patent skills.[62] The Court considered the special skills of Plaintiffs' counsel in determining the reasonableness of their hourly rates, and therefore finds that this factor does not support a higher fee award. *See Shipes*, 987 F.2d at 321.

---

[60] R. Doc. 281-2 at 15.
[61] *Id.*
[62] *Id.* at 16.

### 4. The Preclusion of Other Employment

Plaintiffs maintain that this case required significant devotion of time, to the exclusion of work on other matters.[63]  Plaintiffs do not provide evidence that their counsel was required to refuse other employment because of this case, and therefore, fee enhancement based on this factor is unsupported.  *See id.* at 321-22.  Furthermore, this factor has already been accounted for in that any potential loss of income in refusing other employment is compensated for in the number of billable hours used to calculate the lodestar.  *Id.* at 322 (explaining that "this factor will ordinarily be subsumed within the lodestar amount").

### 5. The Customary Fee

Plaintiffs reiterate that the hourly rates submitted are customary and reasonable in fee-shifting cases.[64]  This has already been factored into the lodestar, and therefore, does not support an upward adjustment.

### 6. Whether the Fee is Fixed or Contingent

Plaintiffs submit that because they retained their counsel on a contingent-fee basis, their counsel bore considerable risk in prosecuting this case.[65]  As Besco points out,[66] the contingent nature of the case cannot serve as the basis for a fee enhancement.  *See Walker*, 99 F.3d at 772 (citations omitted).  As previously stated, this factor does, however, support the reasonableness of the lodestar.

### 7. Time Limitations Imposed by the Client or Circumstances

Plaintiffs note that a timely trial was imperative and that Besco delayed the ultimate result through its various litigation tactics, including its arguments related to standing and filing of its

---

[63] *Id.*
[64] *Id.* at 17.
[65] *Id.*
[66] R. Doc. 285 at 3.

own suit.[67]  These are not abnormal circumstances, however, and were already accounted for in any additional hours that counsel were required to expend.  *See Shipes*, 987 F.2d at 321.

### 8. The Amount Involved and the Results Obtained

Plaintiffs assert that they obtained an exceptional result, including an award of exemplary damages and injunctive relief.[68]  Indeed, Plaintiffs pursued several causes of action and the jury found for them on each one, while rejecting all of Besco's claims.  The award includes $886,103.10 in contract damages; $552,000.00 in bad faith consequential damages; $1,500,000.00 in damages as a result of fraud, unfair competition, trade-secrets violations, and patent infringement; and $2,000,000.00 in exemplary damages; totaling $4,938,103.10.[69]  Plaintiffs are also entitled to declaratory and injunctive relief.[70]  While Plaintiffs were undoubtedly very successful, because this factor is presumably subsumed in the lodestar, "enhancement based on results obtained is proper only in rare and exceptional cases," *id.* at 322 n.9, and "only when the fee applicant can demonstrate that 'it is customary in the area for attorneys to charge an additional fee above their hourly rates for an exceptional result.'"  *Walker*, 99 F.3d at 772 (quoting *Shipes*, 987 F.2d at 322).  Plaintiffs have not made this showing.  Nor have Plaintiffs demonstrated that these results were the result of superior attorney performance, as required by *Perdue*.  *See* 559 U.S. at 554.  Even if the Court were to read this factor together with the following one, so that the argument is that the successful results were the result of the attorneys' superior performance, Plaintiffs have not provided "specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel,'" as is required.  *Id.* (quoting *Blum*, 465 U.S. at 897).  Moreover, the Supreme

---

[67] R. Doc. 281-2 at 17.
[68] *Id.* at 17-18.
[69] R. Doc. 267.
[70] The Court addresses this relief contemporaneously in a separate Order & Reasons.

Court has limited such enhancement to three rare circumstances, none of which is present here.[71]

Finally, Plaintiffs point to the Fifth Circuit's holding that "the most critical factor in determining an attorney's fee award is the degree of success obtained,"[72] but they ignore the Fifth Circuit's explanation that "courts must consider the plaintiff's degree of success to determine *whether the lodestar is excessive*." *Combs*, 829 F.3d at 394 (emphasis added). This factor, then, is more frequently used to adjust the lodestar downward, not upward. Fee enhancements, both before and after *Perdue*, are not warranted merely because a party is very successful. *Id.* ("*Perdue*, consistent with the [Fifth Circuit's] frequent pronouncements, explains that lodestar enhancements are to be rare."). Because of Plaintiffs' overall success, the Court does not find the lodestar excessive, but neither does the Court find that such success warrants enhancement.

### 9. The Experience, Reputation, and Ability of the Attorneys

Plaintiffs submit that their "attorneys are experienced and have superior ability."[73] As with the third factor, the Court considered the experience of counsel in determining the reasonableness of their hourly rates, and therefore finds that this factor does not support a higher fee award. *See Blum*, 465 U.S. at 898 (the "experience of counsel should be reflected in the reasonableness of the hourly rates"). Nor have Plaintiffs shown, as explained previously, that their attorneys' performance, even if superior, warrants enhancement under *Perdue*.

### 10. The Undesirability of the Case

According to Plaintiffs, this case was undesirable because the outcome was unknown and it presented substantial risk, yet their counsel accepted the challenge, despite the claims being

---

[71] The three circumstances are: (1) "where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation"; (2) "if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted"; and (3) when "an attorney's performance involves exceptional delay in the payment of fees." *Perdue*, 559 U.S. at 554-56.

[72] R. Doc. 281-2 at 17 (quoting *Black*, 732 F.3d at 503).

[73] R. Doc. 281-2 at 18.

"hotly contested."[74]  This simply is not the "type of undesirability contemplated by *Johnson*, which noted that civil rights attorneys face hardships in their communities because of their desire to help civil rights litigants and disapproval by the community can result in economic hardship." *Martinez*, 2016 WL 4594945, at *9 (citing *Johnson*, 448 F.2d at 719, and *Cooper v. Pentecost*, 77 F.3d 829, 833-34 (5th Cir. 1996)).  In addition, granting an enhancement based on the type of undesirability expressed by Plaintiffs would effectively be granting a contingency enhancement, which is barred by *Burlington*.  *See In re Miniscribe Corp.*, 309 F.3d 1234, 1245-47 (10th Cir. 2002) (Hartz, J., concurring) (cautioning against use of a *Johnson* factor for enhancement when it would in effect grant a contingency enhancement).  The Court declines to grant an enhancement based on this factor.

### 11. The Nature and Length of the Relationship with the Client

Plaintiffs do not cite this factor, so the Court will not address it.[75]

### 12. Awards in Similar Cases

Plaintiffs first reiterate that they have cited local cases awarding similar hourly rates.[76] Consideration of these hourly rates is subsumed in the lodestar calculation and supports the reasonableness of the lodestar.  Plaintiffs also cite three cases as support that a fee enhancement is appropriate under this factor, but none of them is a similar case.  Two are bankruptcy cases, *see In re Southeast Banking Corp.*, 314 B.R. 250 (S.D. Fla. 2004), and *In re Pilgrim's Pride Corp.*, 690 F.3d 650 (5th Cir. 2012), and the third is a diversity case based on Texas human-rights law.  *See Jackson v. Host Int'l Inc.*, 426 F. App'x 215 (5th Cir. 2011).  Plaintiffs have not shown that enhancement is warranted based on this factor.

---

[74] *Id.* at 19.
[75] *Id.* at 15 (explaining that not all *Johnson* factors are applicable).
[76] *Id.* at 19.

In sum, given consideration of the *Johnson* factors, the Court finds that the lodestar provides a reasonable award of attorney's fees and that neither an upward nor a downward adjustment of the lodestar is warranted.

## E. Costs and Expenses

Plaintiffs seek to recover all costs and expenses that their counsel and they personally incurred in this matter.[77] According to Plaintiffs, they are entitled to costs "beyond those specifically enumerated in 28 U.S.C. § 1920 and other statutory law" because Cajun's Rental Agreement, which the jury found binding and enforceable, requires that "Besco pay all of [Cajun's] costs, including attorney's fees and expenses, incurred in connection with the collection of past due amounts from [Besco]."[78] Besco maintains that Plaintiffs are not entitled to any costs or expenses that fall outside of § 1920.[79]

Section 1920 provides that a federal court may tax the following as costs under Federal Rule of Civil Procedure 54(d):

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

---

[77] R. Doc. 281-2 at 24.
[78] *Id.*; *see also* R. Doc. 281-3 (section 3.2).
[79] R. Doc. 285 at 8-9.

28 U.S.C. § 1920; *Crawford Fitting*, 482 U.S. at 440. "A court may award only those costs specified in section 1920, unless there is explicit statutory or contractual authority to the contrary." *Johnson*, 639 F. Supp. 2d at 709 (citing *Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001)); *see also Crawford Fitting*, 482 U.S. at 445.

While the Rental Agreement provides such contractual authority, it provides only that Besco must pay Cajun's costs "incurred in connection with the *collection of past due amounts* from [Besco]."[80] Plaintiffs, however, assert that this provision covers **all** costs and expenses incurred in this matter, which involved several causes of action unrelated to the "collection of past due amounts." The language of the Rental Agreement clearly does not extend so far. *See Hoffman v. Travelers Indem. Co. of Am.*, 144 So. 3d 993, 998 (La. 2014) ("When a contract's language is clear and explicit and leads to no absurd consequences, no further interpretation may be made in search of the parties' intent."). Because Plaintiffs have not made any effort to show which non-taxable costs and expenses were "incurred in connection with the collection of past due amounts from Besco," the Court will not award any such costs and expenses on the basis of the Rental Agreement, as many of Plaintiffs' costs and expenses are likely unrelated to the contract claims. *See Astro-Med, Inc. v. Plant*, 2008 WL 2883769, at *5 (D.R.I. July 25, 2008) (awarding non-taxable costs covered by contractual language for breach of contract, but not for state trade-secrets violations).

Plaintiffs also vaguely imply that they may be entitled to costs under "other statutory law."[81] Indeed, their successful LUTPA claim entitles them to reasonable attorney's fees *and* costs. *See* La. R.S. 51:1409(A). However, Plaintiffs again have failed to make any showing as to

---

[80] R. Docs. 281-2 at 24; 281-3 at 2 (emphasis added).
[81] *Id.* at 24.

which non-taxable costs may be recovered under LUTPA.  Accordingly, Plaintiffs have failed to carry their burden of showing they are entitled to non-taxable costs and expenses.

Although Plaintiffs may seek taxable costs under § 1920 and Rule 54(d) (and Besco does not contend otherwise), they must file a bill of costs with the clerk of court and follow the procedure set forth in the local rules.  *See* 18 U.S.C. § 1920 ("A bill of costs shall be filed in the case …."); Fed. R. Civ. P. 54(d)(1) (directing the clerk to tax costs); Local Rule 54.3.1 ("The party applying for taxation of costs must serve notice of submission of the matter before the clerk."); *see also Lagarde v. Metz*, 2017 WL 2371817, at *3 (M.D. La. May 31, 2017) (explaining that filing a motion for taxable costs with the court instead of the clerk is procedurally improper); *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 2011 WL 2160928, at *7 (S.D. Tex. May 27, 2011) ("To request taxable costs, the prevailing party must file a bill of costs with the clerk. …  Taxable costs are taxed by the clerk rather than the court.") (quoting *RD Legal Funding LLC v. Erwin & Balingit, LLP*, 2011 WL 90222, at *4-5 (S.D. Cal. Jan. 10, 2011)).

## F.  Interest

Plaintiffs assert that because Besco did not explicitly oppose the amount of prejudgment interest they requested, Cajun is entitled to an award of interest in the amount of $492,825.62.[82] The Court is duty-bound, however, to examine the asserted bases for interest as well as the calculated amounts.[83]

### 1.  Unpaid Invoices

Plaintiffs first argue that additional interest is due for the unpaid invoices (the written contract claims).  They explain that the jury's award of $886,103.10 included interest through July 8, 2019, and an additional $14,626.62 in interest has accrued through August 29, 2019.  The Court

---

[82] R. Doc. 294 at 9.
[83] *See* R. Doc. 281-2 at 25.

agrees that additional interest should be awarded, but because interest has continued to accrue since Plaintiffs made this calculation, the parties are to submit an updated calculation of interest (through January 31, 2020) with a per diem for such interest beyond this date.

### 2. Diverted Rentals

Plaintiffs next assert that prejudgment interest is due for the jury's award of "bad faith" consequential damages of $552,000.00 (the amount Besco owes Cajun for the rentals it would have otherwise had to make from Cajun, *i.e.* the "diverted rentals"). Plaintiffs maintain that the rate of interest set forth in the Rental Agreement (18% per year) should apply,[84] such that prejudgment interest on the award of consequential damages totals $208.624.33 as of August 29, 2019. Plaintiffs provide no support for the proposition that the contract's 18% interest rate should apply to the damages Cajun suffered as a result of Besco's bad faith breach of contract. Nor do Plaintiffs explain why interest should accrue from the date the diverted rentals were due.[85]

Prejudgment interest for this state-law claim is governed by Louisiana law. *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1208-09 (5th Cir. 1993). The bad faith breach of contract here sounds in contract and not in tort because the duty that Besco violated arose solely from its contractual relationship with Cajun. *See Meredith v. La. Fed'n of Teachers*, 209 F.3d 398, 407 (5th Cir. 2000) (explaining that under Louisiana law, whether a bad faith breach of contract sounds in tort or contract depends on whether the duty breached is one owed to all persons or to only those having contractual rights); *see also White v. State Farm Mut. Auto. Ins. Co.*, 479 F. App'x 556, 561 (5th Cir. 2012) ("We believe that the Louisiana Supreme Court would regard claims alleging breach of a contractual duty in bad faith as a species of breach-of-contract claim

---

[84] *See* R. Doc. 281-3 at 2 (section 3.2 provides that "[i]nvoices not paid within 30 days of the invoice date shall be subject to interest charged at the rate of 1.5% per month," which amounts to 18% per year).

[85] Plaintiffs simply calculate these amounts as if the contractual terms applied. *See* R. Doc. 281-12.

rather than one sounding in tort."). When a party breaches a contract that prescribes an interest rate for overdue payments, the party must pay damages with the contractual interest rate from the date the debt was due; when there is no agreed-upon interest rate, the legal rate is used instead. *See* La. Civ. Code art. 2000 ("When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500."); *see also Gross v. RSJ Int'l, LLC*, 2012 WL 729955, at *5 (E.D. La. Mar. 6, 2012) ("[U]nder Louisiana law, interest is recoverable on debts arising *ex contractu* from the time they become due, unless otherwise stipulated.") (internal quotation marks and citations omitted). Here, the Rental Agreement set the terms and conditions for rentals of the ERIS. Therefore, these contractual terms, including the interest rate for overdue payments and the timeframe when payments become due, apply to the rentals of the ERIS that Besco diverted from Cajun.

Accordingly, the Court awards $208,624.33 in prejudgment interest through August 29, 2019, on the award of consequential damages, but again, because interest has continued to accrue since Plaintiffs made this calculation, the parties are to submit an updated calculation of interest (through January 31, 2020) with a per diem for such interest beyond this date.

### 3. Award Based on Fraud, Trade-Secrets, and Trade-Practice Violations

Finally, according to Plaintiffs, $269,574.67 is due in prejudgment interest (also as of August 29, 2019) on the jury's $1.5 million award for Plaintiffs' claims of fraud, trade-secrets, and trade-practice violations. Plaintiffs calculated this amount using the applicable Louisiana legal rates of interest and the date of February 1, 2016, as the "date damage began."[86] While the Court agrees that the state legal interest rate is appropriate, it disagrees that February 1, 2016, is the

---

[86] R. Doc. 281-13.

appropriate start date. Plaintiffs do not offer any explanation for selecting February 1, 2016, leaving the Court to guess that it approximates the time Besco had one of the ERIS tools reverse-engineered.[87] Regardless, legal interest on damages awarded for these tort claims does not attach from the "date of damage," but from the date of judicial demand. La. R.S. 13:4203 ("Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, 'ex delicto' … ."); *see Camalo v. Courtois*, 280 So. 3d 956, 960 (La. App. 2019) (explaining that "[f]raud by its very nature is ex delicto" and thus interest attaches automatically from the date of judicial demand); *Bihm v. Deca Sys., Inc.*, 226 So. 3d 466, 471, 494 (La. App. 2017) (affirming judgment ordering parties to pay judicial interest on LUTSA and LUTPA damages from the date of judicial demand); *Pierrotti v. Johnson*, 2016 WL 6330423, at *6, 15 (La. App. Oct. 28, 2016) (affirming judgment ordering defendants to pay judicial interest on LUTPA damages from the date of judicial demand). Therefore, the parties are to calculate interest on these damages from the date of judicial demand and submit a corrected and updated calculation of interest (through January 31, 2020) with a per diem for such interest beyond this date.

## III.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion for attorney's fees, litigation expenses, costs, and prejudgment interest (R. Doc. 281) is GRANTED IN PART and DENIED IN PART. Plaintiffs are awarded attorney's fees in the total amount of $954,526.05; Plaintiffs are denied non-taxable costs but may seek taxable costs via a bill of costs pursuant to the procedure of this Court; and Plaintiffs are awarded prejudgment interest as reflected above and as will be updated in accordance with the parties' submissions.

---

[87] *See* R. Doc. 241 at 8-9.

Within fourteen days from the entry of this Order & Reasons, the parties are to submit a proposed final judgment incorporating all proper relief, including relief conforming to this Order & Reasons and the other Orders & Reasons issued contemporaneously. In addition, within fourteen days from the entry of this Order & Reasons, the parties are to submit the corrected and updated calculations of prejudgment interest as directed above.

New Orleans, Louisiana, this 23rd day of January, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE