UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CAJUN SERVICES UNLIMITED, LLC, *et al*. | CIVIL ACTION |
| | NO. 17-491 |
| VERSUS | c/w 18-5630 and 18-5932 |
| BENTON ENERGY SERVICE COMPANY dba BESCO TUBULAR, *et al*. | SECTION M (2) *Pertains to all cases* |

## ORDER & REASONS

Before the Court is an application for appellate attorney's fees filed by appellees/plaintiffs Cajun Services Unlimited, LLC d/b/a Spoked Manufacturing, T2 Tools & Design, LLC, Shane Triche, and Heath Triche (collectively, "Cajun").[1] Appellant/defendant Benton Energy Service Company d/b/a Besco Tubular ("Besco") responds in opposition.[2] Cajun's fee application and the opposition were filed in the United States Court of Appeals for the Federal Circuit following its determination of the appeal of this case. The Federal Circuit then remanded the application to this Court "to determine in the first instance whether Cajun is entitled to attorneys' fees incurred in successfully defending th[e] appeal brought by B[esco] and, if so, the proper amount of those fees."[3] Having considered the parties' submissions, the record, and the applicable law, the Court issues this Order & Reasons awarding Cajun the bulk of the appellate attorney's fees it requests.

---

[1] C.A. 20-1997 (Fed. Cir.), R. Doc. 59-1.
[2] C.A. 20-1997 (Fed. Cir.), R. Doc. 62.
[3] C.A. 20-1997 (Fed. Cir.), R. Doc. 63.

I.  BACKGROUND

This consolidated action addressed the contested rights to an elevator roller insert system ("ERIS"), a technology used in drilling for oil.[4] Cajun and Besco disputed the contractual arrangement between them while the ERIS was being developed and while Besco was renting the ERIS from Cajun; the validity of the patent obtained by Cajun for the ERIS (U.S. Patent No. 9,988,862, "the '862 Patent"); the propriety of Besco's having had the ERIS reverse-engineered and copied; Besco's use of what it alleged were its own versions of the ERIS; and the ownership rights related to the ERIS.[5] Cajun sought injunctive relief to stop Besco from using its alternative designs of the ERIS; a declaratory judgment that it owns the ERIS and that Besco assign to it all right, title, and interest to all improvements and modifications made to the ERIS; a declaratory judgment that Besco infringed the '862 Patent; and damages for (1) willful infringement of the '862 Patent; (2) violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1831-1839 ("DTSA"); (3) violation of the Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431-1439 ("LUTSA"); (4) violation of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401-1430 ("LUTPA"); (5) bad faith breach of contract; and (6) fraud.

A four-day jury trial was held,[6] which resulted in a jury verdict in favor of Cajun and against Besco on all claims.[7] The jury determined that there was a written agreement between Cajun and Besco for rental of the ERIS tool (the "Rental Agreement") and that Besco breached the agreement in bad faith. It awarded Cajun $866,103.10 in damages for breach of contract and $552,000.00 for Besco's bad faith breach. The jury also found that Cajun was the owner of all

---

[4] For a more complete discussion of the ERIS technology, *see* R. Docs. 210 at 1-3 & 241 at 3-5 and the documents cited therein.

[5] For a more complete discussion of the business relationship between Cajun and Besco, *see* R. Doc. 241 at 5-11 and the documents cited therein.

[6] R. Doc. 257.

[7] R. Doc. 267.

right, title, and interest to all improvements and modifications made to the ERIS to the exclusion of all others. In addition, the jury found that Besco's conduct amounted to fraud, violated the LUTPA, violated the DTSA and LUTSA willfully and maliciously, and infringed the '862 Patent. As a result, it awarded $1.5 million in damages for these violations and infringement and $2 million in exemplary damages for willful and malicious violation of the DTSA.

After trial, the Court resolved the parties' post-trial motions, including most notably for purposes of the present application, Cajun's motion for attorney's fees and costs incurred in prosecuting the case in the district court.[8] As part of its ruling, the Court awarded Cajun $954,526.05 in attorney's fees under the provisions of the LUTPA, LUTSA, and DTSA.[9] The Court entered final judgment in Cajun's favor, and Besco appealed. The Federal Circuit affirmed. *Cajun Services Unlimited, LLC v. Benton Energy Service Co.*, 855 F. App'x 771 (Fed. Cir. 2021).

## II.   PENDING APPLICATION

Cajun now argues that it is entitled to an award of the attorney's fees it incurred in successfully defending the final judgment on appeal, which it says totals $134,814.50.[10] In doing so, Cajun invokes the same bases it cited to support the award of fees at the trial court level.[11] It argues that its requested billing rates and hours are reasonable under the lodestar method of fee calculation, especially given the complexity of the case.[12] Cajun does not seek a fee enhancement.[13]

In opposition, Besco argues that Cajun's application for appellate fees should be denied in its entirety because it "mischaracterizes the record" by claiming that this Court awarded fees on

---

[8] R. Doc. 281.
[9] R. Doc. 309.
[10] C.A. 20-1997 (Fed. Cir.), R. Doc. 59-1 at 15, 19.
[11] *Id*. at 12-13.
[12] *Id*. at 13-19.
[13] *Id*. at 19.

the basis of the Rental Agreement, a contract, when it did not.[14]  In addition, as it did in opposing Cajun's original motion for attorney's fees, Besco argues that the Court should reduce the hourly billing rates proposed by Cajun.[15]  Besco also reprises its argument that the total fee amount Cajun requests is unreasonable, again asking the Court to reduce the amount of the overall billed hours for time spent on unproductive, excessive, or administrative work, and for vague or redundant entries.[16]  Finally, Besco argues that an additional downward adjustment is warranted under the *Johnson* factors because most of the issues raised on appeal were briefed in the district court and involved no novelty.[17]

### III.  LAW & ANALYSIS

#### A.  Cajun's Entitlement to Appellate Attorney's Fees

Under the American Rule, a prevailing litigant may not ordinarily recover attorney's fees from a loser absent a contractual or statutory fee-shifting provision.  *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 257, 260 (1975).  In its application, Cajun maintains that an award of appellate attorney's fees is warranted under the Rental Agreement, LUTPA, DTSA, and LUTSA.[18]  Besco does not dispute that fees are awardable under the LUTPA, DTSA, or LUTSA, but denies vehemently that Cajun has a contractual basis to recover attorney's fees, pointing to the Federal Circuit's observation that "the district court rejected [Cajun's] proposed contractual basis for fees."[19]  To be sure, Besco argues that Cajun's "material misrepresentation of the underlying proceedings," and its wrongful invocation of a contractual basis for an award of

---

[14] C.A. 20-1997 (Fed. Cir.), R. Doc. 62 at 6, 8.
[15] *Id*. at 8-9.
[16] *Id.* at 11-19.
[17] *Id.* at 19-21.
[18] C.A. 20-1997 (Fed. Cir.), R. Doc. 59-1 at 12-13.
[19] C.A. 20-1997 (Fed. Cir.), R. Doc. 62 at 8 (quoting C.A. 20-1367 (Fed. Cir.), R. Doc. 62 at 4); *see also* C.A. 20-1997 (Fed. Cir.), R. Doc. 63 at 3 n.3; R. Doc. 309 at 5 n.27.

appellate fees, should cause this Court, in its discretion, to reject Cajun's application *in toto*.[20]  This the Court will not do.  Cajun's reference to a contractual basis for its request is more a mistake, borne of sloppiness, than an effort to mislead the Court.  Thus, while Cajun, in cut-and-paste fashion, does re-urge the Rental Agreement as a contractual basis for a fee award, it simultaneously frames its request this way: "*For the same sound reasons ordered by the District Court*, and in light of the successful defense of Besco's appeal, [Cajun] respectfully request[s] additional fees commensurate with the work, time and hours expended on the Final Judgment Appeal."[21]  Because this Court excluded contract as a basis for its award of fees,[22] Cajun's application is properly read to ask only that appellate fees be awarded under the same three statutory bases supporting the original fee award.  Nevertheless, the Court cautions Cajun to be more careful – that is to say, more accurate – in its recital of the history of this case and the basis for any request it might make to this Court or any other court in the future.

On appeal, the Federal Circuit affirmed the judgment on the jury verdict, including the relief awarded under the LUTPA, DTSA, and LUTSA.  As noted in the Court's prior ruling, each of these statutes supports an award of fees when a violation of the statute is established.  *See* La. R.S. 51:1409(A) (attorney's fees shall be awarded when damages are awarded under the LUTPA); 18 U.S.C. § 1836(b)(3)(D) (attorney's fees may be awarded to prevailing party under the DTSA when trade secret was willfully and maliciously misappropriated); La. R.S. 51:1434 (attorney's fees may be awarded to prevailing party under the LUTSA when trade secret was willfully and maliciously misappropriated).  Each of these provisions supports an additional award for appellate fees when a trial court judgment predicated on the statutory violation is upheld on appeal.  *See,*

---

[20] C.A. 20-1997 (Fed. Cir.), R. Doc. 62 at 8.
[21] C.A. 20-1997 (Fed. Cir.), R. Doc. 59-1 at 12 (emphasis added).
[22] R. Doc. 309 at 5 & n.27.

*e.g., Laurents v. La. Mobile Homes, Inc.*, 689 So. 2d 536, 543 (La. App. 1997) (awarding appellate fees under LUTPA); *see also Quinlan v. Sugar-Gold*, 293 So. 3d 722, 729 (La. App. 2020) ("The general rule regarding additional attorney fees for work done on appeal is that an increase in attorney fees is usually allowed where a party was awarded attorney fees by the trial court and is forced to and successfully defends an appeal."), *cited in* C.A. 20-1997 (Fed. Cir.), R. Doc. 63 at 4 n.4. Besco does not contend otherwise. Accordingly, because Cajun was the prevailing party on the appeal of the judgment based on these statutory violations, this Court finds that an award of appellate attorney's fees to Cajun is also warranted under the same statutory provisions.

### B. Lodestar Analysis

Cajun now seeks to have the Court fix the amount of appellate attorney's fees it is entitled to recover. In the Fifth Circuit, courts apply a two-step method for determining a reasonable attorney's fee award, beginning with calculating the "lodestar." *Combs v. City of Huntington*, 829 F.3d 388, 391-92 (5th Cir. 2016). A court must determine the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). As the party requesting fees, Cajun bears the burden of establishing the reasonableness of the fees it requests by submitting adequate documentation – namely, time records, affidavits, and the like. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (observing that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"); *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, 838 F. Supp. 2d 516, 518 (E.D. La. 2012). "After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended 'by affidavit or brief with sufficient

specificity to give fee applicants notice' of the objections." *Who Dat Yat Chat*, 838 F. Supp. 2d at 519 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

Although there is a strong presumption that the lodestar is reasonable, a court next considers the various factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),[23] and may adjust the lodestar upward or downward depending on the weight it assigns to those factors. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010), and *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)). The party seeking the adjustment bears the burden of showing that an adjustment is justified. *See Kelstrom*, 50 F.3d at 329. The lodestar, however, "may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Black*, 732 F.3d at 502 (citing *Saizan*, 448 F.3d at 799).

Cajun states that $134,814.50 is the appropriate lodestar for its appellate fees.[24] On appeal, as throughout the litigation, Cajun was represented by the Scott Law Group, LLP ("SLG") and Keogh, Cox & Wilson, Ltd. ("Keogh Cox").[25] SLG and Keogh Cox attorneys logged a total of 351.7 hours working on the appeal.[26] According to Cajun, the total value of these services represents the amount of its requested award of appellate fees. In other words, as with its original request for fees incurred at the trial level, Cajun's lodestar request for its appellate fees is not reduced by a single penny from the total value of the time written up, although such reductions are to be expected in the exercise of billing judgment.

---

[23] The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases. *Id.* at 717-19.

[24] C.A. 20-1997 (Fed. Cir.), R. Doc. 59-1 at 6.

[25] *Id.*; R. Doc. 309 at 7.

[26] C.A. 20-1997 (Fed. Cir.), R. Doc. 59-1 at 6.

The lodestar analysis requires a determination of an appropriate hourly rate in the local market as well as the hours reasonably expended. *See McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381-83 (5th Cir. 2011) (applying rates applicable where district court sits rather than rates applicable to attorney's place of work absent certain limited circumstances, such as a showing that out-of-district counsel was necessary to the litigation). According to the declarations and billing records submitted, Cajun seeks to recover for services performed on appeal by three attorneys: SLG senior partner, Walter J. Scott, Jr., for whom Cajun seeks a rate of $450.00 per hour for 117.3 hours of work;[27] SLG partner, George T. Scott, for whom Cajun seeks a rate of $350.00 per hour for 206.5 hours of work;[28] and Keogh Cox partner, Tori S. Bowling, for whom Cajun seeks a rate of $350.00 per hour for 27.9 hours of work.[29] Cajun asserts that the rates proposed for its counsel are at or below their customary rates, are "likely below the average rate for the handling of an appeal at the Federal Circuit" for attorneys with equivalent experience, are the same as those accepted by this Court in conjunction with its original fee request, and were not questioned by Besco on appeal.[30] Cajun's declarations also attest to the qualifications and experience of its timewriters: George Scott with 34 years of commercial litigation experience; Walter Scott with 13 years of litigation experience with a focus on patent law; and Tori Bowling with 16 years of commercial litigation experience.[31] And, as with the original fee award, Besco again challenges the rates for all three attorneys, urging that the rates be set at $300 per hour for Walter Scott; $250 per hour for Tori Bowling; and $225 per hour for George Scott.[32]

---

[27] C.A. 20-1997 (Fed. Cir.), R. Docs. 59-1 at 6; 59-3; 59-4.
[28] C.A. 20-1997 (Fed. Cir.), R. Docs. 59-1 at 6; 59-3; 59-4.
[29] C.A. 20-1997 (Fed. Cir.), R. Docs. 59-1 at 6; 59-2.
[30] C.A. 20-1997 (Fed. Cir.), R. Docs. 59-1 at 5-6; 59-2; 59-3; 59-4.
[31] C.A. 20-1997 (Fed. Cir.), R. Docs. 59-1 at 5-6; 59-2; 59-3; 59-4.
[32] C.A. 20-1997 (Fed. Cir.), R. Doc. 62 at 8.

"An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested." *Martinez v. Refinery Terminal Fire Co.*, 2016 WL 4594945, at *7 (S.D. Tex. Sept. 2, 2016) (citing *Kellstrom*, 50 F.3d at 328). While an attorney's affidavit alone cannot support a rate's reasonableness, *see Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (observing that "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"), courts in the Fifth Circuit also employ their "'own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value.'" *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 702 n.1 (E.D. La. 2009) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)). Neither side here provides support for the rates urged other than the declarations of the involved counsel and case law.[33]

As for the rates in the original fee request, the Court again finds that Cajun's proposed hourly rates for its lawyers on the appeal fall within the range of rates allowed by other courts in this district, though at the higher end of that range. *See, e.g., EnVen Energy Ventures, LLC v. Black Elk Energy Offshore Operations, LLC*, 2015 WL 3505099, at *2-3 (E.D. La. June 3, 2015) (finding hourly rates of $325 for partner/shareholder with 20 years of experience, $300 for associate with 10 years of experience, and $275 for associate with seven years of experience to be reasonable); *Wagner v. Boh Bros. Constr. Co.*, 2012 WL 3637392, at *15 (E.D. La. Aug. 22, 2012) (finding hourly rates of $275 for partner/shareholder with 10 years of experience, and $235 for

---

[33] Besco does not submit the hourly rates of its own appellate counsel for comparison purposes.

associate with four years of experience to be reasonable); *Foley v. SAFG Ret. Servs., Inc.*, 2012 WL 956499, at *2 (E.D. La. Mar. 20, 2012) (finding hourly rates of $350 for partner/member with over 30 years of experience, and $275 for associate with over eight years of experience to be reasonable); *Johnson*, 639 F. Supp. 2d at 701-02 (E.D. La. 2009) (finding hourly rates of $300 for partners and $225 for associates to be within the customary range of rates in the New Orleans area); *Oreck Direct, LLC v. Dyson, Inc.*, 2009 WL 961276, at *6 (E.D. La. Apr. 7, 2009) ("The Court is familiar with the local legal market and notes that the top rate for partner-level attorneys here [*i.e.*, New Orleans] is between $400 and $450 per hour."); *Bd. of Supervisors of La. State Univ. v. Smack Apparel Co.*, 2009 WL 927996, at *4, *7 (E.D. La. Apr. 2, 2009) (finding that $325 was a reasonable hourly rate for attorney with 10 years of experience in a specialty practice and for attorney with 29 years of unspecialized legal experience); *In re OCA, Inc., Sec. & Derivative Litig.*, 2009 WL 512081, at *25 (E.D. La. Mar. 2, 2009) (finding that, in the New Orleans legal market, partner-level attorneys performing securities work bill at rates between $400 and $450 per hour and associates bill at rates between $200 and $250 per hour).

As reflected by the time entries, each attorney contributed to Cajun's successful defense of the appeal. And Besco points to no factor as would call for a reconsideration of the Court's prior approval of Cajun's proposed rates. Hence, the Court finds that the requested hourly rates of Cajun's attorneys who worked on the appeal are reasonable and recoverable.

Besco asks the Court to reduce the total hours Cajun requests either by subtracting certain questionable time entries or by a percentage from the total, pointing to specific entries it says reflect time spent on unproductive, excessive, or administrative work, and other time entries it says are vague or redundant, all evincing a lack of billing judgment.[34] These include block-billed

---

[34] C.A. 20-1997 (Fed. Cir.), R. Doc. 62 at 7-14.

entries describing the attorney's services as "work sessions" or "attention regarding appeal," handling correspondence or attending conferences, and making filings (which Besco categorizes as administrative or clerical work, as opposed to legal work).[35] While the Court is generally satisfied that most of the time entries in Cajun's invoices reflect a sufficient level of detail and description about the number of hours charged and the nature of the services rendered as to support the conclusion that the corresponding hours were reasonably expended and the services reasonably rendered, the Court agrees with Besco that many of the entries are too vague or questionable to support such a conclusion.[36] Consequently, based on its own detailed review of the entries, the Court will apply a 10% reduction to the lodestar figure Cajun requests to account for those that are vague or otherwise questionable.

In addition, "[t]he [fee] applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437 (citation omitted). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799. A court has discretion to reduce the number of hours awarded, or a percentage from the total, for vague and incomplete documentation insufficient to demonstrate billing judgment. *Id.*; *Kellstrom*, 50 F.3d at 324. Cajun insists that each of its attorneys exercised billing judgment, attaching their declarations attesting, word-for-word, that they did so.[37] Attorneys seeking to shift the burden for their fees to an opposing party "are charged

---

[35] *Id*. at 8-13 (citing, *inter alia*, C.A. 20-1997 (Fed.Cir.), R. Doc. 59-3 at 12-20).
[36] On the other hand, the Court rejects certain other challenges Besco makes to Cajun's claimed hours. For example, Besco argues that Cajun logged excessive hours in drafting "a single brief" on appeal since "many of the same arguments and issues in this appeal were already extensively briefs" in the trial court. C.A. 20-1997 (Fed. Cir.), R. Doc. 62 at 9-10. However, having raised these issues on appeal (many of which were quite complex), Besco cannot complain that Cajun took care to address them in its appellate brief.
[37] Each of the declarations include the following paragraph:
> I further declare that I exercised billing judgment to ensure that the time committed to the handling of this appeal was reasonable. I ensured that no excessive redundant or unproductive time is

with proving that they exercised billing judgment." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996). The declarations do not show that Cajun's counsel wrote off any excessive, redundant, or unproductive hours, or give any other specific instance of the exercise of billing judgment; instead, in conclusory fashion, they simply recite that billing judgment was exercised. Thus, while the declarations are not devoid of value, they cannot satisfy the whole of Cajun's burden to demonstrate billing judgment. *See id.* at 769-70 (plaintiffs failed to prove billing judgment where they provided no evidence of having written off hours); *see also Tech Pharm. Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 908 (E.D. Tex. 2017) (attorney failed to show billing judgment when her affidavit did not refer to "a single minute that was written off as unproductive, excessive, or redundant") (quotation omitted). Consequently, the Court finds it appropriate to reduce Cajun's hours by an additional 10 percent to account for lack of billing judgment. *See Saizan*, 448 F.3d at 800 (10% reduction for lack of billing judgment); *see also Walker*, 99 F.3d at 770 (15% reduction for lack of billing judgment); *Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987) (13% reduction for inadequate documentation); *Tech Pharm. Servs.*, 298 F. Supp. 3d at 906 (reducing the number of each firm's hours by 6% for lack of billing judgment); *Innovention Toys, LLC v. MGA Entm't, Inc.*, 2014 WL 1276436, at *4 (E.D. La. Mar. 27, 2014) (reducing the submitted hours by 10% for lack of evidence of billing judgment).

Accordingly, having reduced the submitted hours by a total of 20 percent, the Court calculates the lodestar to be $107,851.60 (or $134,814.50 - $26,962.90 = $107,851.60).

---

included in the Fee Application. To the contrary, the three attorneys that handled this appeal are also the three attorneys who handled the trial, and the overwhelming majority of the District Court litigation. Given the fact-intensive nature of the issues presented in this appeal, which necessitated a familiarity with the entire record, significant efficiencies were unquestionably gained by having the same counsel handle this appeal. Further, no time was included for travel or participation in meetings by unnecessary participants. Nor do the time records reflect any duplication of efforts.

C.A. 20-1997 (Fed. Cir.), R. Docs. 59-2 at 6; 59-3 at 6; 59-4 at 5-6.

## C. The *Johnson* Factors

Besco urges a further downward adjustment of the lodestar based on two of the *Johnson* factors.[38]   *See Johnson*, 488 F.2d at 717-19.  It cites the first *Johnson* factor to argue that "[t]he Court should weigh the hours claimed against its own knowledge, experience, and expertise of the time required to complete similar activities" and, having done so, it should reduce the claimed hours because "the majority of the issues raised in this appeal were previously briefed at the District Court [and] that [Cajun was] previously awarded attorneys fees for that briefing."[39]  On Cajun's original motion for fees, the Court found that this factor was accounted for in the lodestar calculation and therefore did not warrant an upward adjustment.[40]  *See Walker*, 99 F.3d at 771 ("The first factor already is included in the lodestar ….").  The Court makes the same finding now on Cajun's application for appellate fees[41] – namely, that this *Johnson* factor was accounted for in the lodestar calculation and does not warrant the downward adjustment Besco now urges.  Moreover, as the Supreme Court has observed, a defendant (like Besco here) "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."  *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980)).  It is the prudent appellee who takes care to respond thoroughly – as is necessary – to all issues raised by an appellant seeking to undo what the appellee has won in the court below.

Besco also argues that the lodestar is unreasonable under the second *Johnson* factor because there are "no novel issues of law raised in this appeal," especially for "experienced patent

---

[38] C.A. 20-1997 (Fed. Cir.), R. Docs. 62 at 19-21.
[39] *Id*. at 20.
[40] R. Doc. 309 at 16.
[41] "After all, in the law, what is sauce for the goose is normally sauce for the gander."  *Heffernan v. City of Paterson*, 578 U.S. 266, ___, 136 S. Ct. 1412, 1418 (2016).

13

litigators" like Cajun's counsel.[42] On Cajun's original motion for fees, Cajun sought an upward adjustment, asserting that this case presented complex patent and intellectual property issues, along with highly fact-intensive and legally challenging claims for fraud, unfair competition, and trade-secrets violations.[43] But the Court concluded that "[t]he novelty and complexity of the issues were reflected in the hourly rates and number of billable hours, and thus do not warrant an upward adjustment."[44] The Court likewise concludes on Cajun's application for appellate fees that this factor was accounted for in the lodestar calculation and cannot support the downward adjustment Besco now urges.

In sum, having considered the *Johnson* factors advanced by Besco, the Court finds that the lodestar provides a reasonable award of attorney's fees and that a downward adjustment of the lodestar is not warranted.

### III.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Cajun's application for appellate attorney's fees is GRANTED and the amount of the fee award is fixed as $107,851.60.

New Orleans, Louisiana, this 9th day of December, 2021.

_____<br>
BARRY W. ASHE<br>
UNITED STATES DISTRICT JUDGE

---

[42] C.A. 20-1997 (Fed. Cir.), R. Docs. 62 at 21.
[43] R. Doc. 309 at 16.
[44] *Id*. (citing *Blum*, 465 U.S. at 898-99 (explaining that the novelty and complexity of the issues are presumably fully reflected in the lodestar calculation, and therefore are inappropriate bases to increase the fee award); *Shipes v. Trinity Indus.*, 987 F.2d 311, 321 (5th Cir. 1993) (same)).